[No. A042479. First Dist., Div. Four. June 22, 1989.]

RAFAEL R. PINTOR, Plaintiff and Respondent, v.
FELIMON ONG et al., Defendants and Appellants.

**COUNSEL**

Lawrence S. Viola and John W. Knapp for Defendants and Appellants.

Alan R. Marks for Plaintiff and Respondent.

OPINION

**ANDERSON, P. J.**—In this case we determine that Civil Code section 2941[1] permits a homeowner, upon satisfaction of the obligation secured by a deed of trust, to recover damages for emotional distress from the assignees of the beneficiary for their refusal to execute and deliver to the trustee a request for full reconveyance. Accordingly, we affirm the judgment in favor of plaintiff Rafael R. Pintor (respondent) awarding him $15,000 for the "mental and emotional strain" he suffered in his efforts to obtain from defendants Felimon and Betty Ong (appellants) the request for full reconveyance.

## I. FACTS

Viewing the evidence in the light most favorable to respondent as we must,[2] the record reveals the following: In August 1981, Mr. and Mrs. Pintor borrowed $5,775 from Craciolo Arienza, executing in Arienza's favor an installment note for that amount, secured by a deed of trust on their home. Mr. Arienza assigned the note and deed of trust to appellants on July 21, 1982. The Pintors paid off the principal balance on October 19, 1983, making their final interest payment of $81.81 on November 1. On October 25, 1983, Crocker National Bank, the collection agent for the secured note, notified appellants that final payment had been received, and informed them that if the debt has been satisfied, section 2941 required them to execute and record a "certificate of discharge or deed of reconveyance."

Respondent testified he asked Mrs. Ong "to release whatever papers due me. Because I told [her] I have already paid off the whole amount as what the bank told me. . . . Mrs. Ong told me . . . that I have to pay. And she demanded more money . . . . She said more than $1,200." She demanded this additional amount because Mr. Arienza owed her money, and because respondent was late on a payment. She refused to go forward unless

---

[1] This section states, in relevant part: "(b) When the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note and deed of trust and a request for a full reconveyance to be executed by the trustee. . . . [¶] (d) The violation by a beneficiary, trustee, or mortgagee, or assignee thereof, of any provision of this section shall make the beneficiary, trustee, or mortgagee, or assignee thereof, liable to the trustor or mortgagor, or the owner of the land, as the case may be, . . . for all damages which any of such persons may sustain by reason of such violation, and shall also forfeit to any of such persons the sum of three hundred dollars ($300)."
Unless otherwise indicated, all further statutory references are to the Civil Code.
[2] See *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427; 429 [45 P.2d 183]; 9 Witkin, California Procedure (3d ed. 1985) Appeal, section 278, page 289.

respondent paid her the additional sum. Mr. Ong then got on the phone, repeated that respondent still owed them $1,200, and told him he needed a lawyer.

Then in March 1985, interest rates dropped and respondent attempted to refinance his home through his real estate broker, Cecilio Jemera. The preliminary title report on respondent's property still showed appellants' lien. Jemera contacted appellants and asked them to sign and record a request for full reconveyance so that respondent could proceed with the refinancing. They again refused.

Respondent's son also called appellants about removing the lien, and was told: " 'Your parents owe us money' . . . 'You should talk to them about it because we're not going to sign over the reconveyance.' " Respondent then hired Attorney Ramiro Castro who wrote several letters to appellants urging their cooperation in expediting the reconveyance. He also offered to prepare the appropriate documents.

Respondent filed the original complaint on October 22, 1985, and the case went to trial on the third amended complaint for a statutory action under section 2941. Appellants moved unsuccessfully to vacate the judgment and for new trial. This appeal followed.

## II. DISCUSSION

Appellants urge reversal on the following four grounds: (1) damages stemming from violation of section 2941 are contractual in nature; (2) respondent cannot recover damages for emotional distress unless he brings forth evidence of substantial damages in addition to emotional distress; (3) the court erred in concluding the $300 penalty was inadequate; and (4) there was insufficient evidence to justify an award of $15,000. As we demonstrate, none of these arguments is persuasive or compels reversal.

### A. *The Action Sounds in Tort*

Appellants maintain that a section 2941 action is contractual in nature because it is brought on the terms of the underlying contract/deed of trust, and that in the absence of section 2941 a trustor could sue for reconveyance pursuant to the trust deed. Thus they insist respondent cannot recover damages for emotional distress. We disagree.

The present action is in tort rather than contract because it seeks damages for violation of a statutory duty. (*Young* v. *Bank of America* (1983) 141 Cal.App.3d 108, 113 [190 Cal.Rptr. 122].) Accordingly, we apply the gener-

al rule of tort damages, namely, that all detriment proximately caused by breach of a legal duty is compensable, including damages for emotional distress. (§ 3333; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173]; *Young* v. *Bank of America, supra,* 141 Cal.App.3d at p. 111.) The fact that any given security instrument *might* also compel the beneficiary to deliver a request for full reconveyance is of no consequence; the duty to reconvey arises from the express provisions of the statute regardless of any contract. Respondent did not go to trial on a breach of contract theory. ■ Where the identical act constitutes both a tort and a breach of contract, the injured plaintiff ordinarily can choose which action to pursue. (See *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 432; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 102, p. 127.)

In *Young,* a credit cardholder sued the Bank of America (Bank) alleging violations of the Credit Card Act.[3] She reported to the Bank that her card had been stolen, but the Bank continued to seek collection of unauthorized charges and communicated erroneous credit information to a credit reporting service. Under the act, an issuer must correct billing errors within a prescribed time following notice. Further, the issuer cannot communicate unfavorable credit information to third parties when a billing dispute is pending. Willful violations of these provisions permit the cardholder to collect damages, which the court in its discretion may treble. (§§ 1747.50, 1747.70.)

The trial court permitted plaintiff to amend her complaint to include a prayer for damages for pain, suffering and emotional distress. The jury awarded her $50,000 in general damages. On review the Court of Appeal affirmed, stating that "wilful violations of the statutory standards entitle a cardholder to compensation for all damages resulting therefrom, including damages for mental and emotional distress." (*Young* v. *Bank of America, supra,* 141 Cal.App.3d at p. 114.)

Appellants attempt to distinguish *Young,* arguing that unlike section 2941, the Credit Card Act is a comprehensive scheme which imposes fair business practices on credit institutions for the protection of consumers. As the court in *Young* pointed out, such an act " 'is remedial in nature and in the public interest [and] is to be liberally construed to the end of fostering its objectives.' " (*Young* v. *Bank of America, supra,* 141 Cal.App.3d at p. 114.)

This purported distinction is not convincing. The Credit Card Act is modern legislation which governs the issuer-credit cardholder relationship

---

[3] Section 1747 et seq.

with respect to the recent phenomenon of plastic credit. Section 2941, originally enacted in 1872 as part of the act which established our Civil Code, governs the no less important relationship of mortgagor-mortgagee (now also trustor-beneficiary-trustee) with respect to the duties of the beneficiary, trustee or mortgagee upon satisfaction of the underlying obligation. The need for the protection which section 2941 affords to property owners who have discharged their debt, but cannot otherwise clear the cloud lingering over their title because of the record of the mortgage or deed of trust, is no less compelling today than it was in 1872. The present case illustrates this need. Respondent attempted informally to expedite reconveyance but appellants continually rebuffed his efforts. In the process, he encountered difficulty in refinancing his home because of the cloud on his title. It was not until after filing this lawsuit that respondent obtained full reconveyance of his property.

■ Like the Credit Card Act, section 2941 also is remedial in nature. The policy of this state favors liberal construction of such laws to protect all persons coming within their purview. (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 480 [58 Cal.Rptr. 249, 426 P.2d 753].) That the action also sounds in tort is further evident from the fact that subdivision (d) imposes a penalty for violation of section 2941, and a companion statute makes such violation a misdemeanor, further punishable by fine and/or imprisonment. (§§ 2941, subd. (d), 2941.5.)[4]

■ Appellants also make the confusing argument that "the form of action is contract" because respondent "failed to articulate or plead any tort." Appellants go on to say that under the facts of this case, there is no tort of intentional infliction of emotional distress; (2) tortious breach of the covenant of good faith and fair dealing; or (3) negligence. If by these statements they mean that respondent failed to successfully plead a common law tort, so what? He pled and successfully went to trial on an action for violation of a statutory duty, pleading and proving duty, breach or violation thereof, causation and damages. Section 2941 makes the violator *strictly* liable for all damages sustained "by reason of the violation." (Subd. (d).) There was no need to plead or prove negligence, intentional tort, or tortious breach of the good faith covenant.

Finally, appellants tell us that the law treats a liability created by statute as quasi-contractual, arguing from this premise that section 2941 damages therefore are limited to damages which may be recovered in an action on

---

[4]Section 2941.5 reads: "Every person who willfully violates Section 2941 is guilty of a misdemeanor punishable by fine of not less than fifty dollars ($50) nor more than four hundred dollars ($400), or by imprisonment in the county jail for not to exceed six months, or by both such fine and imprisonment."

the underlying contract. This is simply wrong. Appellants confuse the statutory *duty* to reconvey with the $300 statutory forfeiture imposed by section 2941, subdivision (d).

■ It is true that for purposes of attachment, California law generally treats an action to recover a statutory liability as brought on an implied-at-law contract. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 101, p. 126.) For example, it has been held that attachment was proper in an action to recover treble interest resulting from payment of usurious interest, because "upon payment of the usurious interest by respondent, an implied contract that appellant would respond in treble damages arose in her favor." (*Anderson* v. *Doolittle* (1950) 97 Cal.App.2d 836, 838 [218 P.2d 848].) Had respondent sought an attachment for the $300 penalty, it might be we would classify such action as quasi-contractual. But that is not the case here. Respondent sued for compensatory damages and also prayed for the statutory forfeiture. The action here sounds in tort.

### B.  *Section 2941 Remedies*

■ Alternatively appellants urge us to reverse the judgment because the trial court incorrectly determined that the $300 penalty "is plainly inadequate relief in a case of this character." Citing *Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 113 [180 P.2d 321, 171 A.L.R. 913], the court concluded the statute "should not apply when the remedy provided by statute is inadequate." In *Orloff,* the court held injunctive relief was proper where a racecourse establishment ousted plaintiff from the premises without cause, in violation of certain state civil rights statutes. The statutory scheme provided for recovery of actual damages and a penalty. In countering the argument that these remedies excluded all other remedies for violation of the right conferred, the court reasoned that section 4 directs courts to liberally construe the provisions of the Civil Code " 'to effect its objects and to promote justice,' " and the statutory remedies were inadequate to accomplish those goals. (*Id.,* at pp. 112-115.)

The trial court misread section 2941, subdivision (d). That provision is in conjunctive form; the violator is liable "for *all damages*" which the trustor may sustain by reason of the violation, "*and shall also forfeit*" the sum of $300. (Italics added.) The penalty is *in addition to* liability for damages. There was no reason to rely on *Orloff* because here the statutory remedies of damages and a forfeiture were adequate and encompassed the compensatory damages which the court awarded for mental and emotional distress.

But we fail to see how the court's erroneous reasoning prejudiced appellants, because they *agree* that the statute allows for damages as well as the

penalty. ■ It is by now elementary that if the decision of the lower court is correct, we will affirm the judgment in spite of erroneous logic or reasoning. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

## C. *Emotional Distress Damages*

■ Appellants are adamant that respondent is not entitled to recover damages for emotional distress in this case. The linchpin of their argument is the recent decision in *Andersen* v. *Pacific Bell* (1988) 204 Cal.App.3d 277 [251 Cal.Rptr. 66].

In *Andersen,* plaintiff Carol Lydon attempted to assert a tort claim against Pacific Bell for retaliatory discipline, predicated solely on emotional harm. The court affirmed summary judgment in favor of Pacific Bell because Lydon could not allege substantial damages apart from emotional distress. In support of this proposition it quoted from the following passage in *Crisci* v. *Security Ins. Co.,*[5] *supra,* 66 Cal.2d at page 434: "The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.] Obviously, where, as here, the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced, and we are not here concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests."

*Crisci* does not stand for the proposition cited, i.e., a plaintiff *must have* substantial damages apart from emotional distress to recover for that harm. At the conclusion of the above quoted passage, the court explained that it was not "concerned with the problem whether invasion of the plaintiff's right to be free from emotional disturbance is actionable where there is no injury to person or property rights in addition to the inflicted mental distress." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 434, fn. 4.) Appellants, and the court in *Andersen,* seem to forget that our Supreme Court subsequently has allowed plaintiffs to go forward with negligence actions where the only harm alleged is serious emotional distress. (See *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278].)

---

[5] *Crisci* involved an insurer's breach of the implied covenant of good faith and fair dealing.

In any event, we are not faced with a negligence action and, thus, need not tangle with such vexing concepts as foreseeability in deciding whether a duty of care exists towards plaintiff under the circumstances. (See *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.) The duty here is absolute and absolutely clear. Nor can appellants seriously contend there is a problem of recovery for "mere bad manners or trivialities" where the Legislature has deemed noncomplying behavior sufficiently egregious to impose civil and criminal sanctions for statutory violations.

As in *Young,* respondent is entitled to compensation for all damages resulting from violation of section 2941, including damages for emotional and mental distress. (*Young* v. *Bank of America, supra,* 141 Cal.App.3d at p. 114.)

### D. *Excessive Damages*

■ Appellants alternatively contest the amount of damages awarded, asserting that the $15,000 award was "clearly excessive" and not supported by the evidence. We disagree.

■ To put the award in context, it is helpful to recall that to recover emotional distress damages, "the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory." (*Young* v. *Bank of America, supra,* 141 Cal.App.3d at p. 114.) The range of injury broadly encompasses " ' "all highly unpleasant mental reactions . . ." ' " (*ibid.*) and " 'includes fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain.' " (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 648-649 [257 Cal.Rptr. 865, 771 P.2d 814].)

■ As the record demonstrates, the harm suffered by respondent was not trivial or transitory, and fits within the confines of emotional distress injury established by case law. Respondent testified he was "so upset" when Mr. Ong told him he needed a lawyer. He asked, "[W]hy should I pay this more amount of money when I have paid the bank the whole amount . . .?" Later, he explained, "Oh, I was so upset, I do not know what to do, I was in a dilemma how to—how to solve this problem. I have no money. And I just recovered from my—from my deeds because I just bought a new house. I was so angry, frustrated, thinking that you have your own house, but it's just nothing because somebody is holding a lien on it, it—you are mad." When asked if he had any fears, respondent answered, "Plus . . . interest rate is going down, and you are afraid that any time the interest rate will go down, and you cannot refinance your house because . . . somebody is

holding a lien in your house. You feel frustrated. Sometimes you are sleepless, and unreasonable to your family."

In concluding respondent was entitled to compensation for mental and emotional distress resulting from willful violation of section 2941, the court found that respondent experienced "worry, frustration, anger and sleeplessness due to [appellants'] failure to execute and deliver a Request for Full Reconveyance." The court further concluded: "Given the mental and emotional strain suffered by [respondent], over two and one-half (2 1/2) years in his efforts to obtain the Request for Full Reconveyance, the award of $15,000.00 is reasonable and just."

The record amply supports these findings; the award was not excessive.

The judgement is affirmed.

Poché, J., and Channell, J., concurred.