[No. B094821. Second Dist., Div. Seven. Sept. 19, 1996.]

TRUSTORS SECURITY SERVICE, Plaintiff and Appellant, v. TITLE RECON TRACKING SERVICE et al., Defendants and Respondents.

**COUNSEL**

Russell Scott Woodward for Plaintiff and Appellant.

Adleson, Hess & Kelly, Phillip M. Adleson and Steven B. Haley as Amici Curiae on behalf of Plaintiff and Appellant.

Hart, King & Coldren, Michael J. Schroeder, Hornberger & Criswell, Gayle L. Eskridge and Donna Riegel for Defendants and Respondents.

Lawrence E. Green as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—This is an appeal from an action for declaratory relief in which plaintiff and appellant, Trustors Security Service, sought a declaration

that, as the named trustee on deeds of trust, it had statutory and contractual rights to execute a reconveyance and collect a fee when the obligation secured by the trust deed was satisfied. Respondent title companies and a loan tracking company also sought a declaration trustees no longer had the exclusive statutory right to execute and record reconveyances. They argued the 1988 amendment to Civil Code section 2941 created a co-equal alternative for title insurers to compete with trustees to clear title. The trial court agreed with the title insurers and concluded trustees had neither an enforceable statutory nor contractual right to execute and record reconveyances.

We conclude the trial court's interpretation of Civil Code section 2941[1] is not supported by the statutory language nor by the legislative history of the 1988 amendment to section 2941 authorizing title insurers for the first time to clear title. Accordingly, we reverse the judgment in favor of the title insurers and loan tracking company and remand for further proceedings.

### FACTS AND PROCEEDINGS BELOW

The majority of loans secured by real property in California are evidenced by a promissory note and a deed of trust. The promissory note is a promise the debtor/trustor makes to the lender/beneficiary to repay the loan on the terms indicated in the note. (See 4 Cal. Real Estate Law & Practice, Secured Transactions, §§ 110.01-110.02, pp. 110-4 to 110-6.) A deed of trust is the document which evidences the debt is secured by a particular piece of real property. The deed of trust contains a legal description of the real property to which it applies and identifies: (1) the debtor/trustor; (2) the lender/beneficiary; and (3) the trustee. A trustee of a deed of trust has two principal functions: (1) to foreclose against the real property when necessary and (2) to issue and record a reconveyance when the debt has been paid. (See Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) Real Property Secured Transactions, § 1.28, pp. 36-37; see also 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trusts and Mortgages, § 9.2, p. 10, § 9.3, pp. 15-18.)

Commercial trustees distribute blank trust deed forms to various lenders. The commercial trustee's name is preprinted on the forms. If a lender elects to use one of these forms the lender fills in the necessary data concerning the real property, the debtor/trustor and the lender/beneficiary. The commercial trustee is usually unaware a given lender has used its form and therefore is unaware it has been named as a trustee on a given trust deed until foreclosure or reconveyance is requested. (See 4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trusts and Mortgages, § 9.3, p. 15.)

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

Historically, when a lender was paid in full the lender/beneficiary would send the necessary documentation and reconveyance fee to the trustee and request it to execute a reconveyance. If the debtor/trustor continued to own the property the trustee was directed to record the reconveyance in the county recorder's office. Alternatively, if the debtor/trustor had sold or refinanced the property, the trustee executed the reconveyance documents and generally deposited them into escrow for recordation upon close of escrow.

Prior to 1989 there was no specified time period within which a reconveyance had to be recorded after full payment of the loan. Apparently, lenders were not particularly diligent in ensuring reconveyances were executed and recorded once their loans were satisfied despite civil penalties for failure to do so. (See, e.g., *Pintor* v. *Ong* (1989) 211 Cal.App.3d 837 [259 Cal.Rptr. 577].) The problem was apparently particularly acute with large commercial lenders with in-house trustee departments. (See, e.g., *Siegel* v. *American Savings & Loan Assn.* (1989) 210 Cal.App.3d 953 [258 Cal.Rptr. 746].) As a result many property owners experienced problems selling and clearing title to their property. Parcels of land appeared to be encumbered, not only by a current acquisition loan, but by other historical loans on the property which had been satisfied but not reconveyed. With these clouds on title, some California property owners also encountered difficulty in securing new or refinanced loans.

Title insurers experienced problems of their own. During this period these companies employed staff for the sole purpose of confirming old loans appearing as liens against real property had in fact been paid off. Apparently these companies developed an ad hoc indemnity system among themselves prior to issuing new title insurance policies. In some instances up to 50 percent of title insurance company employees devoted their time to contacting other title insurance companies to obtain these cross-indemnities.

Consumers made numerous complaints to the Attorney General's office. In 1988 the Attorney General proposed amending the Civil Code to impose deadlines for executing and recording reconveyances when loans on real property had been paid in full, and to impose a cap on the amount of fees a trustee could charge for issuing a reconveyance, as well as time limits on when those fees could be charged.

The 1988 amendment to section 2941 incorporated the Attorney General's proposed changes and others. In its current form, under section 2941 lenders and trustees are subject to both civil and criminal penalties for failing to

comply with the statutory deadlines for effecting reconveyances. The amendment authorizes title companies to clear outdated liens which predate the 1988 amendment. Of special significance to this case, the 1988 amendment also authorizes title companies to execute and record "releases of obligation" once the statutory period for lenders and trustees to act has lapsed, provided the title insurers give the affected lender and trustee 10 days' written notice of their intention to file a release of the obligation.

Appellant Trustors Security Service (TSS) is a commercial trustee. It distributes its preprinted forms to numerous lenders in California. Historically, and until 1991, when a loan was repaid, or about to be repaid in escrow, the lender/beneficiary or title insurer would contact TSS and give it the necessary documentation to issue the reconveyance. TSS charged $65 to prepare the reconveyance documents.

Defendant and respondent, Title Recon Tracking Service (TRT) began actively tracking loan payoffs in 1991 on behalf of its client title insurance companies. When a loan secured by a deed of trust is paid off TRT contacts the lender/beneficiary and solicits its reconveyance business. TRT's letter notifies the lender/beneficiary of its statutory deadline for filing the reconveyance. TRT informs the lender/beneficiary it will handle the reconveyance at no cost to the lender/beneficiary. TRT also tells the lender/beneficiary it need do nothing other than turn over the necessary documentation so TRT can have the title insurer record a release of obligation after the 75-day statutory waiting period for filing releases of obligations has lapsed.

On the vast majority of these occasions the lender/beneficiary deposits the original documentation on the loan into escrow. On the 65th day after a loan has been paid in full TRT sends the statutory 10-day notice letter to the lender/beneficiary, trustor and trustee informing them of its intention to record a release of obligation. On the 75th day TRT prepares a release of obligation and submits it to the title insurer for recordation. TRT charges its client title insurers $15 for each trust deed it tracks. Title insurers, in turn, charge the debtor/trustor a $65 fee to record the release of obligation.

When TSS received 10-day notices regarding trust deeds for which its preprinted forms had been used, it contacted TRT or the title insurer to demand the original documentation so it could issue the reconveyance and collect its $65 fee. In each instance TRT or the title insurer refused to release the paperwork to TSS.

In November 1992 TSS filed suit against TRT and numerous title insurers for damages for interference with business and contractual relationship, and injunctive and declaratory relief regarding the parties' respective rights under section 2941. TSS in its complaint alleged section 2941 gave neither TRT nor the title insurers the right to issue releases of obligation for deeds of trust in which it was the named trustee "unless and until plaintiff, as trustee, has failed or refused to record a reconveyance after being presented with the original note, deed of trust and request for reconveyance. Defendants . . . , on the other hand, contend that they may withhold the beneficiaries' request for reconveyance, note and deed of trust from the trustee and proceed to send Notices of Intent to record releases without any prior demand to the trustee."

TRT cross-complained for declaratory relief and damages for intentional and negligent interference with economic advantage. TRT sought a declaration its tracking business complied with section 2941, that neither a lender/beneficiary nor a trustee had to first fail or refuse to comply with a request for reconveyance before title insurers could lawfully prepare and record releases of obligations, and that it had not conspired to interfere with TSS's contractual or business relationships.

Prior to trial the defendant title insurers stipulated for entry of judgment in favor of TSS on its cause of action for interference with business and contractual relationship.[2] Each title insurer paid TSS the amount it alleged it was owed in damages. The parties further stipulated the only issue to be submitted to the court for resolution at trial was TSS's cause of action for declaratory relief and request for injunctive relief.

The matter was tried to the court on the above stipulated facts.[3]

The trial court adopted the arguments of the title insurers and TRT and found in their favor. In its statement of decision the trial court found TSS

[2]The named defendant title insurers were Benefit Land Title Company, Commonwealth Land Title Company, Continental Lawyers Title Company, Fidelity National Title Insurance Company, Lincoln Title Company, North American Title Company, Progressive Title Company, Inc., South Coast Title Company, Stewart Title Insurance Company, United Title Company and World Title Company.

[3]Specifically, the parties stipulated to the following facts:

"1. In or about October 1992 and at various times since, defendant, Title Recon Tracking, Inc. [sic], has processed Release of Obligations under CC 2941 for each of the defendant title companies.

"2. On various occasions since October 1992, defendant, Title Recon Tracking, Inc. [sic], has sent on behalf of each of the defendant title companies Notices of Intent to Release Obligations under CC 2941 to plaintiff, Trustors Security Service, when the defendant title

had neither a contractual nor statutory right to execute and record reconveyances in those situations where TRT or the title insurers had possession and control of the necessary documentation. TSS appeals from the judgment.

## DISCUSSION

### I. *Standard of Review.*

■ TSS in its briefs does not state the applicable standard of review of the issues raised in this appeal. The title insurers claim the standard of review of declaratory relief actions is an abuse of discretion standard. (Citing *Auberry Union School Dist.* v. *Rafferty* (1964) 226 Cal.App.2d 599 [38 Cal.Rptr. 223]; *Roberts* v. *Reynolds* (1963) 212 Cal.App.2d 818 [28 Cal.Rptr. 261]; *Grant* v. *Long* (1939) 33 Cal.App.2d 725 [92 P.2d 940].) We disagree.

In this case the sole issue presented to the trial court for resolution was the proper interpretation and application of section 2941. When an appeal involves the scope and applicability of a statute we are not bound by the trial court's determinations. (*Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014].) Thus, the issue before us is a pure question of law which is subject to this court's independent review. (See *Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44].)

---

company has had in its possession the beneficiaries' executed Request for Full Reconveyance, note, deed of trust, and trustee's reconveyance fee.

"3. On these above-referenced occasions, after receiving defendants' Notice of Intent to Release, plaintiff requested Title Recon Tracking, Inc. [*sic*] and the defendant Title Companies to forward the above-referenced documentation to it so that it could prepare a reconveyance.

"4. On these above-referenced occasions defendants did not forward to plaintiff, Trustors Security Service, the beneficiaries' executed Request for Full Reconveyance, note, deed of trust and trustee's fees.

"5. On these above-referenced occasions the defendant title companies, and each of them, thereafter recorded a Release of Obligation prepared by Title Recon Tracking, Inc. [sic]"

The purpose of the stipulation was to limit the issues at trial. Consequently, this case does not involve the situation where a lender/beneficiary has exercised its option to substitute trustees. (§ 2934a; see also 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 8, pp. 521-522.) Nor does this case involve a situation where a lender/beneficiary or trustee cannot be located in time to perform its statutory duties either because it is located out of state, has since gone out of business, or its location is otherwise unknown.

II. *The 1988 Amendment to Section 2941 Only Authorizes Title Insurers to Record Releases of Obligation in the Event Lenders/Beneficiaries and Trustees Have Failed to Perform Their Respective Statutory Obligations to Request and Execute Reconveyances Upon Full Payment of an Obligation Secured by a Deed of Trust.*

 The parties' respective requests for declaratory relief involve the construction and application of the 1988 amendment now embodied in subdivision (b) of section 2941. TSS argues section 2941 creates a hierarchical system in which title insurers are only permitted to record a release of obligation if both the lender/beneficiary and trustee, after proper request, have failed or refused to comply with their respective statutory duties within the specified time periods. On the other hand, TRT and the title insurers contend the amendment creates a co-equal competing alternative to clear title which authorizes title insurers to bypass trustees and the reconveyance process. They claim the neutral language of section 2941, subdivision (b)(3) does not require a trustee first have the means and opportunity and then fail to issue a reconveyance before a title insurer may properly issue a release of obligation. They claim the only statutory requirements imposed on title insurers is to wait 75 days after satisfaction of a obligation, and to issue notices of intention 10 days prior to filing a release of obligation.

In an independent review of the statutory language and the legislative history of the 1988 amendment, we conclude TRT's and the title insurers' interpretation of section 2941 cannot be sustained.

 " 'We begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." . . . In determining such intent "[t]he court turns first to the words themselves for the answer." . . . We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." . . . "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." . . . "[A] construction making some words surplusage is to be avoided." . . . "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." . . . Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. . . .' " (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155], citations omitted.)

 Under amended section 2941, when an obligation secured by a deed of trust is satisfied, a lender/beneficiary must initiate the process to reconvey

title to the debtor/trustor by supplying the trustee with the necessary documentation. Subdivision (b)(1) provides: "When the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary *shall execute and deliver to the trustee* the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." (Italics added.)

Upon receipt of the necessary documentation a trustee has 21 days within which to record the reconveyance. Section 2941, subdivision (b)(1)(A) provides: "The trustee *shall execute the full reconveyance and shall record or cause it to be recorded, . . . ,* in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees and [such] other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." (Italics added.)

Subdivision (b)(2) of section 2941 presents the first alternative to the prescribed method of issuing reconveyances. This subdivision requires a lender/beneficiary to substitute itself or another as trustee at the request of the debtor/trustor in the event the original trustee fails to perform its obligation although the lender/beneficiary has provided the trustee with the necessary paperwork and fees. Inasmuch as the first alternative also requires use of a trustee and reconveyance, the legislative preference for the use of trustees and reconveyances, rather than title insurers and releases of obligation, is apparent. This subdivision provides: "If the trustee has failed to execute and record, or cause to be recorded, the full reconveyance within 60 calendar days of satisfaction of the obligation, the beneficiary, upon receipt of a written request by the trustor or trustor's heirs, successor in interest, agent, or assignee, shall execute and acknowledge a document pursuant to Section 2934a *substituting itself or another as trustee and issue a full reconveyance.*" (Italics added.)

Section 2941, subdivision (b)(3) provides what is essentially a second fallback provision to be employed as a last resort after the preferred methods have failed to reconvey title. If neither the preferred method nor the first alternative method results in a reconveyance of title within 75 days of satisfaction of an obligation secured by a deed of trust, then title insurers are authorized, after notice to the lender/beneficiary, trustor and trustee, to file a "release of obligation."

This statutory scheme implies title insurers are only authorized to act in the event the lender/beneficiary and trustee have both failed to issue a

reconveyance despite the opportunity to do so. Section 2941, subdivision (b)(3) provides: "If a full reconveyance has not been executed and recorded pursuant to either paragraph (1) or paragraph (2) within 75 calendar days of satisfaction of the obligation, then a title insurance company *may* prepare and record a release of the obligation. However, at least 10 days prior to the issuance and recording of a full release pursuant to this paragraph, the title insurance company shall mail by first-class mail with postage prepaid, the intention to release the obligation to the trustee, trustor, and beneficiary of record, or to their successor in interest of record, at the last known address." (Italics added.)

In the event this alternative must be employed to clear title, the Legislature has provided a release of obligation will be deemed to be the equivalent of a reconveyance of a deed of trust. (§ 2941, subd. (b)(3)(B).)

The language the Legislature used in this subdivision reinforces the view the amendment was intended to create a hierarchical system for issuing reconveyances which permits title insurers to use the substitute method of releases of obligations for clearing title only as a last resort. First, title insurers are not authorized to act until 65 days have elapsed. The statutory waiting period implies lenders/beneficiaries and trustees during this period will perform, or should have the opportunity to perform, their statutory obligations. However, if 60 days have elapsed and the trustee still has not reconveyed title despite the opportunity and means to do so, then the lender/beneficiary must substitute itself or another as trustee and issue the reconveyance at the request of the trustor. (§§ 2941, subd. (b)(2), 2934a; see also 4 Miller & Starr, Cal. Real Estate *supra*, Deeds of Trust and Mortgages, § 9.7, pp. 26-28; *id.* (1996 supp.) p. 10.) The statute gives the beneficiary/ new trustee 15 additional days to perform its statutory obligations and issue the reconveyance before a title insurer is authorized to assume responsibility for clearing title and file a release of obligation. If on the 65th day title has still not been reconveyed, a title insurer still may not issue a release of obligation, but must notify the beneficiary, trustor and trustee of its intent to do so unless the lender/beneficiary/trustee does so within the next 10 days. (§ 2941, subd. (b)(3).)

The 10-day notice requirement of section 2941, subdivision (b)(3) permits the lender/beneficiary/trustee one last chance to issue and record a reconveyance. If the Legislature intended to create a co-equal method of clearing title, there would be no requirement of a 10-day notice to the trustee and beneficiary to urge them to perform their statutory duties.

The notice requirement has another purpose as well. Failure to comply with the requirements of section 2941 subjects the violator to a civil penalty

of $300, plus "all damages which that person may sustain by reason of the violation. . . ." (§ 2941, subd. (d); see also *Pintor* v. *Ong, supra,* 211 Cal.App.3d 837, 844-846.) In addition, willful violations of any provision of section 2941 carry criminal penalties. (§ 2941.5.)[4]

These potential penalties would be unnecessary if the Legislature intended to create a truly competing and co-equal method of clearing title using title insurers. However, the language of section 2941, subdivision (b)(5) makes clear beneficiaries and trustees remain liable for failing to perform their statutory obligations even though a title insurer ultimately cleared title by releasing the obligation. This subdivision provides: "Paragraphs (2) and (3) do not excuse the beneficiary or the trustee from compliance with paragraph (1). Paragraph (3) does not excuse the beneficiary from compliance with paragraph (2)." This provision, which continues to hold lenders/beneficiaries and trustees liable for nonperformance regardless of the circumstances which prevented performance, indicates the Legislature intended these parties to be primarily responsible for issuing reconveyances. Presumably trustees, and especially lenders/beneficiaries, expose themselves to the risk of at least civil penalties and damages in the event a trustor suffers damages from, for example, lost opportunities during the 75-day period a title insurer holds the necessary documentation for reconveying before recording a release of obligation.

The background of the 1988 amendment to section 2941 further supports the view the amendment was intended to create a hierarchical system employing title insurers to clear title only as a last resort. As noted, the Attorney General proposed legislation to amend section 2941 to impose time limits on lenders/beneficiaries to request reconveyances when a loan was paid in full, as well as time limits on trustees under a deed of trust to execute the necessary documentation and either record the reconveyance or deposit the reconveyance documentation to a pending escrow. In addition, the Attorney General proposed a limitation on the amount a trustee could charge for completing and filing the necessary paperwork, as well as limitations on when the fee could be charged.

Elihu M. Harris, as chair of the Assembly Committee on the Judiciary, introduced Assembly Bill No. 3893 on February 18, 1988. The "comments"

---

[4]Section 2941.5 provides:

"Every person who willfully violates Section 2941 is guilty of a misdemeanor punishable by fine of not less than fifty dollars ($50) nor more than four hundred dollars ($400), or by imprisonment in the county jail for not to exceed six months, or by both such fine and imprisonment.

"For purposes of this section, 'willfully' means simply a purpose or willingness to commit the act, or make the omission referred to. It does not require an intent to violate the law, to injure another, or to acquire any advantage."

section of the analysis prepared by the Assembly Committee on the Judiciary summarizes the background of the bill as follows: "The California Attorney General's Office (AG), is the source of this bill. The AG contends that this bill is necessary to resolve a number of problems consumers are encountering in 'closing out loans on real property which have been paid in full.' The AG states that it:

" '[H]as experienced several problems with current law relating to the reconveyance of title under deeds of trust. First, because the loan has been repaid there is no incentive for the lender to *promptly* order reconveyance of title. Second, because reconveyance is a simple clerical function of filling in blanks on a form, there is no reason why they [*sic*] buyer should not be allowed to substitute trustees. Additionally, buyers are often charged 'reconveyance fees' at the time of the initial sale even though the actual reconveyance will not be made for decades. Finally, this office has seen fees as high as $500 charged for this simple transaction.'

"This bill addresses these problems by (a) establishing time limits for the recordation of certificates of discharge and reconveyances, (b) establishing a mechanism where the beneficiary may issue a 'release of obligation' when the trustee has not recorded a reconveyance within 60 days, (c) prohibiting collection of fees for discharge and reconveyance more than 30 days prior to satisfaction of the underlying obligation and (d) requiring that the fees for services in connection with discharge and reconveyances be reasonable." (Italics in original.)

■ Thus, the purpose of the amendment as originally conceived was to require reconveyances to be recorded promptly and to control the timing and amount of fees trustees could charge for their services. Assembly Bill No. 3893 as introduced did not contemplate creating an alternative, or co-equal, procedure for releasing liens. Nor was the amendment proposed to permit title insurance companies to preempt a trustee's historical function.

After the bill's introduction representatives from interested industries met regularly to analyze and propose various amendments to Assembly Bill No. 3893. Members of this group included consultants to the Assembly Committee on the Judiciary, a deputy attorney general and representatives from the California League of Savings Institutions, California Association of Realtors, California Mortgage Bankers Association, California Bankers Association, and amici curiae in this appeal, California Land Title Association and California Trustees' Association.

Assembly Bill No. 3893 was amended four times to provide for criminal as well as civil penalties, to allow trustors to request beneficiaries to

substitute trustees to issue reconveyances when the original trustee failed to record a reconveyance within the specified time period, to provide a fee of $65 or less was conclusively presumed to be reasonable, and other changes.

The language authorizing title insurers to issue releases of obligation did not appear until Assembly Bill No. 3893 was amended the third time on August 11, 1988.

As noted, the impetus for the amendment was to force prompt recordation of reconveyances once loans secured by deeds of trust were paid off. This purpose further undermines TRT's and the title insurers' argument the amendment created co-equal alternatives for clearing title. Assuming a trustee is provided the necessary paperwork and fees, a trustee is obligated under the statute to issue a reconveyance within 21 days. On the other hand, a title insurer has no authority to act until the 75th day after full payment of the loan. Accepting the title insurers' position would force delays, rather than speed up the process for clearing title.

Other legislative history supports the view this section creates a hierarchical system for clearing title, but gives to title insurers the option of filing releases of obligation as a fallback position in the event both a lender/beneficiary and a trustee fail to act within the specified periods. As noted, various representatives from interested industry groups participated in proposing and drafting changes to Assembly Bill No. 3893. A letter from a representative from the California League of Savings Institutions to these industry representatives discusses the amendment's proposed hierarchical system for clearing title. The letter proposes "[r]estructur[ing] subdivision (b) so it clearly contains a 4-step procedure for reconveyances involving deeds of trust (i.e., the preferred procedure; alternative #1 if preferred does not happen; alternative #2 if the first and second steps do not occur; and the retroactive step to clean up any outstanding reconveyances after a specified date)." (Letter dated June 7, 1988, from Dave Milton of Cal. League of Savings Institutions to the industry representatives participating in drafting amendments to Assem. Bill No. 3893.)

The representative from the California Land Title Association echoed the view the proposed provision permitting title insurers to clear title should be considered a fall back position in the event the preferred methods of clearing title failed to result in a reconveyance. In a letter written to the legislative consultant to the Assembly Committee on the Judiciary, the association advocated the position, "[a] title insurance company should be the *reconveyancer of last resort* where the trustee fails to issue a reconveyance and the

beneficiary fails to issue a release." (Letter dated May 27, 1988, from Lawrence Green, Executive Vice-President and Counsel for the Cal. Land Title Assn. to Mr. Rubin Lopez, Consultant to Assem. Com. on Judiciary, italics added.) Apparently, the California Land Title Association has since had a change of heart.

A representative of the California Association of Realtors wrote a letter to the Assembly Committee on the Judiciary consultant on June 9, 1988, noting "[w]e are in agreement with the California Land Title Association that an interested title insurer should be given the necessary statutory authority. . . . [We] believe that the title company which has issued a policy in the transaction is in the best position to effect a reconveyance *when all else fails*; . . . ." (Italics added.)

In addition, in the author's letter to the Governor urging approval of Assembly Bill No. 3893 as passed, Elihu M. Harris described releases of obligation filed by title insurers as a "substitute" procedure. Specifically in his September 9, 1988, letter to then Governor Deukmejian, Assemblyman Harris states: "The bill was necessitated by numerous consumer complaints generated when closing out loans which have been paid in full on real property. AB 3893 includes provisions which will set specific time limits for recording reconveyances, *establish a substitution procedure for recording through the title company* and set a cap on what constitutes a reasonable fee and when a fee may be charged. . . ." (Italics added.)

Other evidence section 2941 did not create co-equal methods for clearing title is apparent from the statutory language permitting only trustees, beneficiaries or mortgagees to charge a fee for issuing reconveyances. (§ 2941, subd. (e).)[5] In proposing changes to Assembly Bill No. 3893 the California Land Title Association argued, "A title company should be entitled to receive the reconveyance fee already paid for which no work was performed." (Letter dated May 27, 1988, from Lawrence Green, Executive Vice-President and Counsel of the Cal. Land Title Assn. to Mr. Rubin Lopez, Consultant to Assem. Com. on Judiciary.) An amendment was proposed to provide for fees to be paid to title insurers when issuing releases of obligation. (Draft Amendments to Assem. Bill No. 3893 as amended in Assem. May 9, 1988.) However, this proposed measure failed to carry the day. In fact, there is currently no statutory authority for title insurers to collect any fee for filing releases of obligation.

---

[5]Section 2941, subdivision (e)(1) provides: "The trustee, beneficiary, or mortgagee may charge a reasonable fee to the trustor or mortgagor, or the owner of the land, as the case may be, for all services involved in the preparation, execution, and recordation of the full reconveyance, including, but not limited to, document preparation and forwarding services rendered to effect the full reconveyance, and, in addition, may collect official fees. . . ."

Based on the evidence presented at trial in this case, it is reasonable to assume the drafters recognized that providing a mechanism for title insurers to clear title would save the title insurance industry millions of dollars they would otherwise pay to employees to secure cross-indemnifications from other title insurers. The drafters likely realized permitting title insurers to be the "reconveyancers of last resort" would adequately address title insurance industry needs and that the resulting savings would be compensation enough.

The trial court, on the other hand, was persuaded by the title insurers' argument that it was unfair to allow trustees to do nothing and yet demand the documents and reconveyance fee after TRT had expended efforts in tracking the loan payoff and soliciting the lenders'/beneficiaries' reconveyance business. The title insurers argued they should be able to compete for the reconveyance business, and if they do a better job at convincing lenders/beneficiaries to use their services, they should be entitled to the reconveyance fee.

We believe the question whether trustees still have a necessary role in the recording of reconveyances is a question of policy best left to the Legislature. In any event, the argument of what constitutes fair competition simply has no bearing on the proper interpretation of section 2941 as adopted and enacted by the Legislature, the only issue before the trial court and this court.

In sum, we hold section 2941 gives trustees both the statutory right and obligation to issue reconveyances as the preferred method of clearing title.[6] Therefore, we further conclude that under section 2941 title insurers may only record releases of obligation after lenders/beneficiaries and trustees have first had the opportunity and then failed within the specified time periods to request, execute and issue a reconveyance on full payment of the underlying obligation. Under the stipulated facts of this case, this means the trustee must be given the opportunity and means—i.e., possession and

---

[6]As noted, the title insurers stipulated to judgment in TSS's favor and paid all damages TSS requested in connection with its cause of action for interference with business and contractual relationship. The parties further stipulated the sole remaining issue for resolution was the parties' respective rights and duties under section 2941. Nevertheless, apparently because the trial court discussed TSS's contractual claim in its statement of decision, the parties in their briefs argue at length regarding whether TSS has a contractual right to issue reconveyances for those deeds of trust in which it is the named trustee.

Based on the parties' stipulation it would appear this issue has been withdrawn from the court's consideration. Because we hold trustees have a statutory right and duty to reconvey title once debts secured by deeds of trust are paid in full (see, e.g., *Pintor* v. *Ong, supra*, 211 Cal.App.3d 837, 841 [actions to enforce obligations created by section 2941 sound in tort]), it is unnecessary to address the issue of TSS's claimed contractual rights under a deed of trust.

control of the reconveyance documents and fees—to perform its statutory obligations. Thus, neither TRT nor the title insurers may withhold reconveyance documents supplied to them from lenders/beneficiaries in situations where TSS is the named trustee on the deed of trust and has requested the documents in order to issue a reconveyance. Accordingly, we reverse the judgment and remand to the trial court to fashion appropriate injunctive relief consistent with this opinion.

## DISPOSITION

The judgment is reversed and remanded to the trial court for further proceedings consistent with this opinion. Appellant to recover its costs of appeal.

Lillie, P. J., and Woods, J., concurred.