Filed 1/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SMS FINANCIAL XXIII, LLC,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CORNERSTONE TITLE COMPANY,<br><br>　　　Defendant and Respondent. | A146711<br><br>(Alameda County<br>Super. Ct. No. HG14737066) |

A bank made a business loan that was guaranteed by the principals of the business and secured by a deed of trust on property the principals owned. Years later, the bank assigned the note and deed of trust to plaintiff SMS Financial XXIII, LLC (SMS). After the borrower defaulted on payment, SMS undertook preparations to foreclose on the deed of trust and in the process discovered that, unbeknownst to the bank, a title company had improperly released the obligation on the deed of trust before the assignment was made. SMS sued the borrower, the principals and the title company. The sole issue on appeal is whether SMS's second amended complaint states a cause of action against the title company for damages under Civil Code section 2941 arising from its preparation, execution and recordation of the release of the deed of trust. The trial court sustained the title company's demurrer without leave to amend, relying on our previous decision in *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972 (*Heritage Pacific*), and dismissed the title company from the case. This was error, and we shall reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

We draw our statement of the facts from the operative complaint. In 2004, U.S. Bank made a business loan to defendant B2B Technologies, Inc. (B2B). The loan was

guaranteed by B2B's principals, the Yousufs, and secured by a second deed of trust on real property the Yousufs owned. In 2011, U.S. Bank assigned the note and the deed of trust to SMS.[1] SMS, B2B and the Yousufs later executed a "Forbearance Agreement," reciting that the loan was in default and agreeing that SMS would not exercise its rights under the note, guaranty and deed of trust as long as B2B made payments according to a schedule as set forth in the agreement. After a few months, however, B2B failed to make the required payments. In 2014, SMS was preparing to initiate foreclosure on the deed of trust, when it learned that in 2007, without the knowledge of U.S. Bank, Cornerstone Title Company (Cornerstone) had executed and recorded a release of the obligation secured by the deed of trust. The release itself states that it was prepared under the provisions of Civil Code section 2941, subdivision (b)(3).[2] That subdivision sets forth the procedure by which a title insurance company may prepare and record a release of a mortgage obligation.[3] SMS alleges that Cornerstone had no authority to prepare and

---

[1] The language of the assignment provided that U.S. Bank "hereby sells, transfers, assigns and sets over to [SMS] all of Assignor's right, title and interest in and to the following Trust Deed, all attendant security agreements, deeds of trust and other collateral as described herein below . . . ." There followed a description of the 2004 deed of trust.

[2] Further undesignated statutory references are to the Civil Code.

[3] Section 2941, subdivision (b)(3) states as follows: "If a full reconveyance has not been executed and recorded pursuant to either paragraph (1) or (2) [which require the beneficiary and trustee to take steps to reconvey the deed of trust after a mortgage has been satisfied] within 75 calendar days of satisfaction of the obligation, then a title insurance company may prepare and record a release of the obligation. However, at least 10 days prior to the issuance and recording of a full release pursuant to this paragraph, the title insurance company shall mail by first-class mail with postage prepaid, the intention to release the obligation to the trustee, trustor, and beneficiary of record, or their successor in interest of record, at the last known address. [¶] (A) The release shall set forth: [¶] (i) The name of the beneficiary. [¶] (ii) The name of the trustor. [¶] (iii) The recording reference to the deed of trust. [¶] (iv) A recital that the obligation secured by the deed of trust has been paid in full. [¶] (v) The date and amount of payment. [¶] (B) The release issued pursuant to this subdivision shall be entitled to recordation and, when recorded, shall be deemed to be the equivalent of a reconveyance of a deed of trust."

record the release, and that contrary to the language of the release, the obligation secured by the deed of trust had not been paid, satisfied or discharged.

SMS sued B2B, the Yousufs and Cornerstone, seeking payment of the loan and a declaration that the release was void. As an alternative, in the event the release was determined to be valid, in its fourth cause of action SMS sought damages for Cornerstone's negligence in executing and recording the release without complying with the provisions of section 2941, subdivision (b)(3). SMS argued that as the successor to U.S. Bank, the original beneficiary of the deed of trust, SMS was entitled to damages, including attorney's fees, under section 2941, subdivision (b)(6), which states, "In addition to any other remedy provide by law, a title insurance company preparing or recording the release of the obligation shall be liable to any party for damages, including attorney's fees, which any person may sustain by reason of the issuance and recording of the release . . . ."

Cornerstone demurred to the fourth cause of action, arguing that SMS failed to allege that the tort claims included in the cause of action were assigned to SMS with the loan and deed of trust. The trial court agreed, and issued an order sustaining the demurrer without leave to amend and dismissing Cornerstone from the case.

We treat the order sustaining the demurrer and dismissing Cornerstone from the case as an appealable judgment of dismissal.[4] (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.)

---

[4] SMS's complaint alleged five causes of action, but only the fourth is at issue here. The first, to recover principal, interest and late charges on the loan, was alleged only against B2B and the Yousufs. The second, for a declaration that the release was of no force or effect and of the respective rights and obligations of SMS and the defendants, and the third, for a declaration that the release was void and canceled, were alleged against all defendants. The fourth, alleged against Cornerstone as an alternative in the event the release was determined to be valid, sought damages for Cornerstone's negligence in executing and recording the release without complying with the provisions of Civil Code section 2941, subdivision (b)(3). The fifth, alleged against B2B and the Yousufs as an alternative in the event the release was determined to be valid, sought to impose and foreclose on an equitable lien on the real property that was the subject of the deed of trust.

## DISCUSSION

SMS argues that the trial court erred in sustaining Cornerstone's demurrer to the damages claim and dismissing Cornerstone from the case.

On appeal from a dismissal after an order sustaining a demurrer, we review the complaint independently to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We assume that the allegations in the complaint are true, and "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*)

SMS alleges that Cornerstone prepared and recorded the release, which represented that the obligation secured by the deed of trust was paid in full and that the release was to be deemed the equivalent of a reconveyance under section 2941, subdivision (b)(3)(B). SMS further alleges that Cornerstone prepared and recorded the release "carelessly, recklessly, negligently, and without authorization from any person having the authority to authorize such act, and without first complying with the provisions of Civil Code § 2941(b)(3)." SMS contends that the release is void and of no effect, but asks that if the release "had or has the effect of releasing or reconveying" the deed of trust, SMS should be awarded damages as authorized by section 2941, subdivision (b)(6).

We begin with the language of section 2941, which, as a remedial statute, is to be liberally construed to protect all persons coming within its purview. (*Pintor v. Ong* (1989) 211 Cal.App.3d 837, 843.) As our colleagues in the Second District explained, "Section 2941, subdivision (b), provides that when an obligation secured by a deed of

---

The trial court's dismissal of Cornerstone from the case rested entirely on its sustaining Cornerstone's demurrer to SMS's fourth cause of action, and because we conclude that the trial court erred in sustaining the demurrer, we reverse. Therefore, we need not consider SMS's argument that, even if the trial court correctly sustained the demurrer to the fourth cause of action the court erred in dismissing Cornerstone from the case in light of SMS's second and third causes of action, which sought declaratory relief against "all defendants," including Cornerstone, and which were not addressed in Cornerstone's demurrer or the trial court's order.

4

trust has been satisfied, the beneficiary shall deliver a reconveyance, which the trustee shall record. If a full reconveyance has not been recorded within 75 days of satisfaction, a title insurer may record a release of the obligation, after first giving at least 10 days' notice to the parties as prescribed. (§ 2941, subd. (b)(3).) When recorded, that release 'shall be deemed to be the equivalent of a reconveyance of [the] deed of trust.' (§ 2941, subd. (b)(3)(B)." (*Cathay Bank v. Fidelity National Title Insurance Co.* (1996) 46 Cal.App.4th 266, 269, fn. 1.)

Section 2941 provides its own remedies for violations of its terms. Thus, "[t]he violation of [section 2941] shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of five hundred dollars ($500)." (§ 2941, subd. (d).) In addition, the statute provides that a title insurance company that prepares or records a release under section 2941, subdivision (b)(3), is "liable to any party for damages, including attorney's fees, which any person may sustain by reason of the issuance and recording of the release." (§ 2941, subd. (b)(6).)[5]

In view of the broad language of the statute, we have no difficulty concluding that SMS has alleged facts sufficient to state a claim against Cornerstone for damages. SMS alleges that as a result of the assignment from U.S. Bank, it is the beneficiary of the deed of trust. SMS alleges that the obligation secured by the deed of trust was released as a result of action taken by Cornerstone, purportedly under section 2941, subdivision (b)(3). It alleges that there is a dispute as to whether the release is valid, and that if the release is valid, SMS will have lost security for the loan to B2B and will therefore have been damaged. Those allegations, which we accept as true for purposes of the demurrer,

---

[5] Moreover, under section 2941.5, "Every person who willfully violates Section 2941 is guilty of a misdemeanor punishable by fine of not less than fifty dollars ($50) nor more than four hundred dollars ($400), or by imprisonment in the county jail for not to exceed six months, or by both such fine and imprisonment. [¶] For purposes of this section, 'willfully' means simply a purpose or willingness to commit the act, or make the omission referred to. It does not require an intent to violate the law, to injure another, or to acquire any advantage."

suffice to state a claim for damages under section 2941, subdivision (b)(6), and therefore the trial court erred in sustaining Cornerstone's demurrer to SMS's cause of action for damages.

Cornerstone contends that there is nothing in the statute to suggest that U.S. Bank, which held the loan and deed of trust at the time Cornerstone filed the release, had any claim against Cornerstone under section 2941, and that therefore U.S. Bank had no claim to assign to SMS with the note and deed. Cornerstone further contends that, even assuming that section 2941 did give rights to U.S. Bank, it would be "unconscionable" if U.S. Bank could sue Cornerstone for damages sustained by the release, and then assign the loan and deed to SMS, which could in turn sue Cornerstone for damages *it* suffered by the release, and then assign the loan and deed to some third party which could also sue Cornerstone for damages *it* sustained by reason of the release. Cornerstone offers no authority to support its position, which is contrary to the explicit statutory language. Whether U.S. Bank, SMS, or anyone else can prove damages against Cornerstone is an open question, which has no bearing on the fact that section 2941, subdivision (b)(6) imposes broad liability on any title insurance company that issues and records a release under subdivision (b)(3). Under section 2941, subdivision (b)(6), SMS, as the holder of an obligation, has the right to prove damages against Cornerstone, as a title company that recorded a release of that obligation. That SMS acquired the obligation from U.S. Bank by assignment does not change our conclusion: The assignment of an obligation carries with it an assignment of the rights incident to that obligation, and those rights include the right to seek damages under section 2941, subdivision (b)(6) from a title insurance company that released the obligation. (§ 1084 ["The transfer of a thing transfers also all its incidents, unless expressly excepted . . . ."].)

Cornerstone relies on this court's decision in *Heritage Pacific*, *supra*, 215 Cal.App.4th 972 to argue that as a matter of law, the assignment of U.S. Bank's contractual rights to SMS does not include the assignment of U.S. Bank's tort claim against Cornerstone under section 2941. Cornerstone's reliance is misplaced. *Heritage Pacific* concerned a promissory note that a borrower executed with a mortgage company.

6

(*Id.* at p. 980.)  The plaintiff, Heritage, acquired the note from the mortgage company, and then determined that the borrower had made false representations in her original loan application.[6]  (*Id.* at p. 982.)  Heritage sued the borrower, alleging intentional misrepresentation, fraudulent concealment, promise without intent to perform, and negligent misrepresentation, all based on the borrower's original loan application with the mortgage company.  (*Ibid.*)  The trial court sustained the borrower's demurrer, and we affirmed, concluding that the transfer of the promissory note to Heritage gave Heritage contract rights, but not fraud rights, which were as a matter of law not incidental to the transfer of the promissory note.  (*Id.* at p. 991.)

In reaching this conclusion, we applied the legal principles set forth in *National Reserve Co. of America v. Metropolitan Trust Co. of California* (1941) 17 Cal.2d 827 (*National Reserve*).  (*Heritage Pacific*, *supra*, 215 Cal.App.4th at pp. 992-993.)  We restate those principles here.  "An unqualified assignment of a contract . . . vests in the assignee the assigned contract . . . and all rights and remedies incidental thereto. [Citation.]  These incidental rights include certain ancillary causes of action arising out of the subject of the assignment and accruing before the assignment is made."  (*National Reserve*, *supra*, 17 Cal.2d at pp. 832-833.)  If an accrued cause of action, whether in contract or tort, "cannot be asserted apart from the contract from which it arises *or* is essential to a complete and adequate enforcement of the contract, it passes with an assignment of the contract as an incident thereof."  (*Id.* at p. 833, italics added.)  But, if the accrued cause of action *can* be asserted by the assignor independent of ownership of the contract, *and* if the cause of action is *not* essential to continued enforcement of the contract, then the cause of action does *not* pass under the assignment as incidental to the

---

[6] The borrower had executed two promissory notes with the mortgage company, each secured by a deed of trust.  (*Heritage Pacific*, *supra*, 215 Cal.App.4th at pp. 980, 985.)  After a foreclosure on the senior deed, Heritage acquired the second note from the mortgage company.  (*Ibid.*)  When Heritage acquired its note, it did not acquire a deed of trust:  the second deed of trust, which had secured its promissory note, had been extinguished.  (*Id.* at p. 985.)

contract unless the assignment specifically or impliedly designates the cause of action. (*Ibid.*)

In *Heritage Pacific*, we determined that the language of the assignment did not specifically or impliedly assign the mortgage company's tort claims to Heritage.[7] (*Heritage Pacific*, *supra*, 215 Cal.App.4th at p. 991.) Accordingly, the fraud claims that Heritage alleged against the borrower would pass under the assignment as incidental to the note if they could not be asserted by the mortgage company apart from the promissory note, or if they were essential to the enforcement of the contract. (*Id.* at pp. 992-993.) The fraud claims, however, failed on both counts: they could be asserted by the mortgage company independently of its continued ownership of the promissory note, and they were not essential to the enforcement of the promissory note. (*Id.* at pp. 990-991, 993.)

Relying on *Heritage Pacific*, Cornerstone argues that the section 2941 claim was not assigned to SMS with the deed of trust because the language of the assignment does not specifically or impliedly designate tort claims, because U.S. Bank could assert a claim against Cornerstone under section 2941 independent of its ownership of the deed, and because the section 2941 claim is not essential to the enforcement of the deed of trust. But *Heritage Pacific* is a different case. There, we considered whether a lender's pre-existing fraud claims, which arose from misrepresentations made to the lender in a loan application, were incidental to the transfer of the loan, and concluded that as a matter of law they were not. (*Heritage Pacific*, *supra*, 215 Cal.App.4th at p. 991.) Here, the issue is not whether a pre-existing tort claim held by U.S. Bank against Cornerstone was transferred from U.S. Bank to SMS with the assignment of the note and deed of trust. By virtue of holding the deed of trust by assignment from U.S. Bank, SMS has its own potential claim against Cornerstone under section 2941, subdivision (b)(6), regardless of any claims that U.S. Bank may have been or may still be able to assert.

---

[7] In *Heritage Pacific,* the assignment included the following language: " ' "Seller does hereby sell, assign and convey to Buyer, its successors and assigns, all right, title and interest in the loan." ' " (*Heritage Pacific*, *supra*, 215 Cal.App.4th at p. 989.)

In sum, we conclude that under section 2941, subdivision (b)(6), SMS, as the holder of an obligation has the right to prove damages against Cornerstone, as a title company that recorded a release of the obligation. Accordingly, the trial court erred in sustaining Cornerstone's demurrer and dismissing Cornerstone from the case.

## DISPOSITION

We treat the trial court's order sustaining the demurrer and dismissing Cornerstone from the case as a judgment of dismissal. The judgment is reversed. SMS shall recover its costs on appeal.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.


A146711, *SMS Financial XXIII LLC v. Cornerstone Title Company*

10

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Ioana Petrou


Attorneys for Appellant     Law Office of Timothy A. Lundell
                 Timothy A. Lundell

Attorneys for Respondent     Gagen, McCoy, McMahon, Koss,
                  Markowitz & Raines
                 Charles A. Koss


A146711, *SMS Financial XXIII, LLC v. Cornerstone Title Company*