JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Timothy McCormick that granted summary judgment to appellee Charter One Bank, F.S.B. ("Charter One") on appellant Michael Pinchot's claim that it failed to timely record a satisfaction of mortgage as required under R.C. 5301.36. He claims it was error to find that Section 1461 et seq., Title 12, U.S. Code, which affects Charter One's lending practices, preempted Ohio's interests in recording real property transactions and that it was further error to deny his motion for partial summary judgment and to dismiss his claim for class certification as moot. We reverse the grant of summary judgment to Charter One, grant partial summary judgment to Pinchot, and remand for further proceedings.
The facts relevant to this appeal are uncomplicated: On December 31, 1998, Pinchot paid in full a loan secured by a promissory note and residential mortgage and Charter One's subsidiary, Charter One Mortgage Corporation ("COMC"), recorded this satisfaction of the mortgage with the Cuyahoga County Recorder's Office on April 27, 1999. R.C. 5301.36 imposes recording duties for residential mortgages, and states in part:
 (B) Within ninety days from the date of the satisfaction of the residential mortgage, the mortgagee shall record the fact of the satisfaction in the appropriate county recorder's office and pay any fees required for the recording. The mortgagee may, by contract with the mortgagor, recover the cost of the fees required for the recording of the satisfaction by the county recorder.
 (C) If the mortgagee fails to comply with division (B) of this section, the mortgagor may recover, in a civil action, damages of two hundred fifty dollars. This division does not preclude or affect any other legal remedies that may be available to the mortgagor.
 (D) As used in this section, "residential mortgage" means an obligation to pay a sum of money evidenced by a note and secured by a lien upon real property located within this state containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium or cooperative unit.
Because Charter One failed to record the satisfaction within ninety days, Pinchot filed suit and sought damages. He also requested class certification, under Civ.R. 23, for a class described as follows:
 All persons who since May 10, 1993 paid off mortgages recorded in Ohio secured by two or fewer residential units where Charter One Bank F.S.B. was the mortgagee — where releases weren't recorded with county recorders within 90 days of the payoffs.
Charter One asserted that, as a federal savings bank, it was subject to the provisions of the Home Owner's Loan Act ("HOLA"), Section 1461 etseq., Title 12, U.S. Code, and associated regulations, particularly Section 560.2, Title 12, C.F.R. which states the federal Office of Thrift Supervision's ("OTS") intent to occupy "the entire field of lending regulation for federal savings associations." It moved for summary judgment, arguing that R.C. 5301.36 was a lending regulation, and could not be applied to it.
Pinchot opposed the motion and moved for partial summary judgment on his individual claim for $250 in statutory damages, citing provisions in Section 560.2, Title 12, C.F.R. that excepted certain state laws from preemption, including real property laws, and laws having "only an incidental effect on lending operations" or whose provisions were not inconsistent with the goals of federal regulations.
In support of its position, Charter One filed two affidavits from banking professionals, both of which stated that R.C. 5301.36 had more than an incidental effect on its lending practices, and that the ninety-day recording requirement and potential $250 liability would directly affect its lending rates. The affiants also stated their professional opinion that the recording of a mortgage satisfaction fell within the definition of "loan servicing," and thus was included in the field of regulation OTS intended to occupy.
The judge granted Charter One's motion for summary judgment, denied Pinchot's motion for partial summary judgment, and overruled the request for class certification as moot. We will address the fifth of Pinchot's seven assignments of error first, because it raises an issue of subject matter jurisdiction.
 V. THE TRIAL COURT LACKED JURISDICTION TO DECIDE CHARTER ONE'S PREEMPTION CLAIM.
Pinchot claims that Charter One's federal preemption argument challenged the constitutionality of R.C. 5301.36, and therefore it was required to serve the Ohio Attorney General under R.C. 2721.12 and GeorgeShima Buick, Inc. v. Ferencak.[1] Charter One counters that preemption raises an issue of statutory interpretation, and it was not required to serve the Attorney General, citing Westlake v. Mascot Petroleum Co.,Inc.,[2] and we agree. Although Mascot Petroleum concerned the preemption of a municipal ordinance by a state statute, the same reasoning applies when considering the preemption of a state statute by a federal statute. The constitutional principle of federal supremacy is not at issue; the issue for determination is whether the state statute is within the field occupied by federal law. We find, consistent with MascotPetroleum, that the federal preemption claimed here presents an issue of statutory interpretation, and service upon the Attorney General was not required. The fifth assignment of error is overruled.
Pinchot's first, second, and fourth assignments of error concern the grant of summary judgment and can be addressed together:
 I. THE TRIAL COURT ERRED IN GRANTING CHARTER ONE BANK'S MOTION FOR SUMMARY JUDGMENT WHERE R.C. 5301.36'S APPLICATION TO CHARTER ONE BANK IS NOT PREEMPTED BY FEDERAL LAW, AS A MATTER OF LAW, BECAUSE IT HAS NOTHING TO DO WITH LENDING.
 II. THE TRIAL COURT ERRED IN GRANTING CHARTER ONE BANK'S MOTION FOR SUMMARY JUDGMENT WHERE CHARTER ONE BANK'S ARGUMENT OF FEDERAL PREEMPTION WAS BASED ON A MATERIAL DISPUTED FACTUAL CLAIM.
 IV. THE TRIAL COURT ERRED IN OVERRULING PINCHOT'S MOTION FOR CLASS CERTIFICATION AS MOOT.
We review the grant of summary judgment de novo, using the same standard as the trial judge.[3] Charter One claims summary judgment was appropriate because there was no dispute that R.C. 5301.36 concerned a "servicing function" of its residential mortgage loans, would have a direct effect upon its loan pricing, and that Section 560.2, Title 12, C.F.R. was intended to preempt any state law in this area. That section states:
 (a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. § 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or S 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.
 (b) Illustrative examples. Except as provided in S 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
 (1) Licensing, registration, filings, or reports by creditors;
 (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;
(3) Loan-to-value ratios;
 (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
 (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
 (6) Escrow accounts, impound accounts, and similar accounts;
(7) Security property, including leaseholds;
(8) Access to and use of credit reports;
 (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
 (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
(11) Disbursements and repayments;
 (12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. § 1735f-7a and part 590 of this chapter and 12 U.S.C. § 1463(g) and § 560.110 of this part; and
 (13) Due-on-sale clauses to the extent provided in 12 U.S.C. § 1701j-3 and part 591 of this chapter.
 (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
(1) Contract and commercial law;
(2) Real property law;
 (3) Homestead laws specified in 12 U.S.C. § 1462a(f);
(4) Tort law;
(5) Criminal law; and
(6) Any other law that OTS, upon review, finds:
(i) Furthers a vital state interest; and
 (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.
Charter One argues that the ninety-day recording requirement and $250 liability for failure to timely record are inconsistent with the "best practices of thrift institutions" under Section 560.2(a), because they increase the costs of loans and raise interest rates for consumers, and that the recording requirement is a part of loan "servicing" specifically preempted in Section 560.2(b)(10).We disagree, because the recording statute at issue is only incidentally related to the bank's lending operation or practices and, to the extent it has any significant effect, is consistent with the goals stated in Section 560.2(a).
Charter One does not contend that the recording duty duplicates some area of federal regulation, but instead argues that the duty imposed by R.C. 5301.36 is so burdensome and expensive that it is inconsistent with "the best practices of thrift institutions," unnecessarily and inefficiently increasing the cost of loans to consumers. We note, however, that it has not claimed that the penalty provision of R.C. 5301.36
is preempted by federal law but, instead, that the entire section is inapplicable. If this were so, Charter One would have no duty to record the satisfaction of a mortgage at all — it could simply execute the certificate of satisfaction required under R.C. 5301.34 and invite the homeowner to complete the process.
In practice, however, it did not require Pinchot to complete the recording process, but did so itself, subject to a clause in the mortgage agreement requiring him to pay "any recordation costs." This fact suggests that Charter One does not consider its completion of recording duties to be utterly inefficient or inconsistent with the "best practices of thrift institutions." R.C. 5301.36 codifies the allocation of a duty in a way that should be so broadly accepted as to be universal; namely, that a lending institution that is in the business of making and facilitating real property transactions is in a better position to navigate the recording process than the average residential homeowner.
Requiring a mortgagee to complete recording duties subsequent to a residential real property transaction certainly is consistent with the best practices of thrift institutions, and Charter One's acceptance of that duty, predicated upon the mortgagor's payment of recordation fees, indicates that it does not consider it inefficient or overly burdensome to take on those duties. The true nature of the preemption claim seems aimed at the ninety-day requirement and the penalty provision; it appears Charter One is willing to accept recordation duties, but considers the timeliness requirement overly burdensome.
The parties both aver that, in addition to Ohio, almost all other states[4] have statutes requiring timely recordation of mortgage satisfactions. While Charter One argues that it is overly burdensome to require it to comply with the "significantly different requirements for recording of satisfactions of mortgages[,]" Pinchot points out that timeliness and penalty provisions have been so widely adopted because they are considered necessary to ensure proper recordation of transactions, and states have experienced problems due to the failure to timely record.[5]
Although we have found no decisional law discussing the purpose of R.C. 5301.36, it is not difficult to see it is intended to ensure prompt recordation, and thus facilitate all real property transactions. We are unable to see how the statute's purpose or method can be considered antithetical to the best practices of any institution conducting real estate transactions. Without these requirements and the costs they impose, both for compliance and for non-compliance, all institutions would be subject to other, likely greater costs, in investigating and clearing title at other points in the real estate transaction process. These costs would likely be greater because they would replace an efficient system of prompt recordation in a single location with an inefficient system of investigating and tracking stale transactions documented in various, undetermined locations. Charter One's request for preemption would allow it to benefit from an efficient system without paying for it, while shifting the costs of its failure to record to other mortgagees, who would be burdened with extra investigation in any real property transaction in which Charter One Bank had any involvement.
R.C. 5301.36 is intended to promote efficiency and certainty in clearing and transferring title in residential real property transactions, and is in all aspects consistent with the best practices of thrift institutions.[6] While the costs of complying with R.C. 5301.36
might have some effect on the ultimate cost of a loan to a consumer, Charter One presented no evidence that these costs were significant, or that the consumer would benefit instead of suffer under an alternative arrangement.
We also find that R.C. 5301.36 is a real property statute not only in name, but in purpose and effect, and has only an incidental effect on Charter One's lending practices. Charter One's affiant, James M. Cavellier, stated that the requirements of R.C. 5301.36 are part of "servicing expenses" that are passed on to the consumer and thus "have a direct effect on Charter One Bank's lending operation and on loan pricing in the marketplace." Charter One failed, however, to quantify the effect of compliance with R.C. 5301.36, even though its current practices admittedly include such compliance, or at least attempted compliance. Nor, as noted, did it address questions concerning whether non-compliance would simply shift costs to other areas in the mortgage lending process.
We do not consider the "direct" effect asserted in Cavellier's affidavit to be the relevant issue in determining whether R.C. 5301.36
directly or incidentally "affect[s] the lending operations"[7] of Charter One. While statutory compliance is directly added into the "servicing expenses" of the loan, the statute is not intended to have that effect, as it is aimed at ensuring the efficiency of all real property transactions and in eliminating confusion and disputes; with respect to its purpose, the statute affects lending operations incidentally, even though institutions pass this incidental effect directly to their borrowers. Moreover, to the extent the recording requirement can be said to directly affect operations, we reiterate that the effect has not been shown to be significant, or even negative given the cost of non-compliance, and we are convinced that R.C. 5301.36 serves the best interests and practices of all thrift institutions.
Charter One claims the recording statute is included as part of loan "servicing" under Section 560.2(b)(10), Title 12, C.F.R. and thus is expressly and irrefutably preempted. We are unconvinced, however, because the recording statute is unlike any of the other lending regulations discussed in Section 560.2(b). While that list is not exhaustive, it is instructive as to the types of regulations preempted, and nowhere is it even hinted that a recording statute should be included. Regardless of whether Charter One includes recordation as part of its "servicing expenses," we consider it to be a duty imposed upon a participant in a real property transaction. Among those participants, R.C. 5301.36 imposes the duty of recordation on the party considered to be most able and qualified to carry it out efficiently. The recording of real property transactions cannot be described as merely loan servicing, and is not preempted by Section 560.2(b)(10).
Charter One also submits that R.C. 5301.36 is overly burdensome because it imposes a penalty for non-compliance without respect to actual damages, and that any borrower who is actually injured will have recourse to a tort action for slander of title. This argument again reflects its confusion concerning its own argument. Although it asserts that it is exempt from R.C. 5301.36 in its entirety, it nonetheless concedes at certain points that it can properly be given the burden of recording, and complains only about the ninety-day deadline.
An action in slander of title would exist only if Charter One had a duty to record the satisfaction of mortgage, rather than simply providing the certification pursuant to R.C. 5301.34. If it concedes that the duty of recording can be imposed upon it, it is then left to argue only that it cannot be required to timely record. Having already admitted, however, that recording is consistent with its "best practices," its argument that recording within ninety days is inconsistent with its best practices rings hollow.
The affidavit from Paul Bailey, Vice-President and Chief Operating Officer of COMC, stated that the ninety-day recording requirement imposed an unreasonable burden because of the number of documents needed to complete the process and the number of people involved. The affidavit, however, failed to explain how this process differed from that imposed upon all other lenders in the state, or how Charter One was differently affected by the requirements. The fact that a mortgagee is subject to different regulations in different states has no bearing here; even if the bank averred (and it did not) that its Ohio employees were also regularly required to complete real estate transactions in other states, we would not immediately be convinced that such an organizational decision was a necessary or inescapable result of unduly burdensome recording requirements among the several states.
Furthermore, the ninety-day requirement is not simply aimed at aiding the individual borrower; it assists all others involved in all real estate transactions, and assists the State by encouraging those transactions and reducing costly disputes. Therefore, Charter One cannot claim the statute is unnecessary or inefficient on the narrow ground that individual borrowers might not be harmed in an individual case. The ninety-day requirement and associated penalty reflects a broader purpose.
The parties have identified only one case that has previously addressed this issue, Konynenbelt v. Flagstar Bank, F.S.B.,[8] and we agree with the decision in that case for the reasons previously stated. Although Charter One complains that Konynenbelt is but a single case and is neither binding nor persuasive, we note that it is consistent with our reasoning and opinion, and that Charter One is unable to present any decision in its favor. Our decision here is supported by Konynenbelt, but is not dependent on it, as a common-sense assessment of Section 560.2, Title 12, C.F.R. and R.C. 5301.36 leads to the same result.
Finally, Charter One claims that the $250 penalty[9] cannot be enforced because any such discipline can be imposed only by the OTS, citing Cantagallo v. Ashtabula Cty. S. L. Co.[10] In Cantagallo, however, the court stated only that a trial judge did not have authority to invalidate a bank merger that had been submitted to, and approved by, the Federal Home Loan Bank Board (the predecessor to the OTS).Cantagallo does not prohibit the penalty imposed here, because once we have determined that the duty of timely recording is not preempted, the ability to enforce that duty must follow.
The judge erred in granting summary judgment to Charter One, and therefore erred in overruling Pinchot's request for class certification as moot. Assignments of error one, two, and four are sustained.
Pinchot's third assignment of error states:
 III. THE TRIAL COURT ERRED IN NOT GRANTING PINCHOT'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
Our disposition of the assignments concerning Charter One's summary judgment motion leaves no dispute concerning Pinchot's motion for partial summary judgment. Charter One admitted violating R.C. 5301.36, and we have determined as a matter of law that federal law does not preempt application of the state statute. We sustain the third assignment of error.
The sixth and seventh assignments state:
 VI. THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING PINCHOT'S OBJECTION TO AND MOTION TO STRIKE JAMES CAVELLIER'S AFFIDAVIT WHERE HE ADMITTED IN HIS DEPOSITION THAT HE WAS NOT COMPETENT TO MAKE AND DID NOT HAVE PERSONAL KNOWLEDGE OF WHAT HE SAID IN HIS AFFIDAVIT.
 VII. THE TRIAL COURT ERRED IN OVERRULING PINCHOT'S OBJECTION TO AND MOTION TO STRIKE THE AFFIDAVIT OF WALKER TODD, WHICH WAS FILED OUT OF RULE WITHOUT LEAVE OF COURT.
Based upon our disposition of the first two assignments of error, we find these assignments moot.[11] The judgment is reversed, and remanded with instructions to enter partial summary judgment in Pinchot's favor and for consideration of his request for class certification.
Judgment reversed and remanded.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] (2001), 91 Ohio St.3d 1211, 741 N.E.2d 138.
[2] (1991), 61 Ohio St.3d 161, 573 N.E.2d 1068, paragraph one of the syllabus, modified on other grounds, Ohioans for Fair Representation,Inc. v. Taft (1993), 67 Ohio St.3d 180, 616 N.E.2d 905, paragraph one of the syllabus.
[3] Civ.R. 56(C); Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 130-31, 705 N.E.2d 717, 720.
[4] Charter One avers that it has mortgage loans in forty-six states, all of which have recording requirements and penalty provisions; Pinchot states that, in addition to Ohio, forty-four other states and the District of Columbia have such laws.
[5] See Trustors Sec. Serv. v. Title Recon Tracking Serv. (1996),49 Cal.App.4th 592, 596, 56 Cal.Rptr.2d 793, 795 (failure to record satisfactions led to numerous difficulties in clearing title in subsequent transactions).
[6] Although Charter One argues that the "best practices" determination is made by the OTS, and not the states, it is our task to interpret both federal and state law, and we are satisfied that the OTS would reach the same conclusion we reach today concerning "best practices."
[7] Section 560.2(c), Title 12, C.F.R.
[8] (2000), 242 Mich. App. 21, 617 N.W.2d 706.
[9] See Jenkins v. Fidelity Fin. Serv. of Ohio (Dec. 2, 1999), Cuyahoga App. No. 75439, unreported (R.C. 5301.36(C) imposes penalty rather than damages because it is unrelated to plaintiff's damages).
[10] (June 29, 1981), Ashtabula App. No. 1023, unreported.
[11] App.R. 12(A)(1)(c).