NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP Nos. CC-13-1376-TaSpD |
| ) | CC-13-1386-TaSpD |
| SUZANNE MARIE TAKOWSKY, ) | |
| ) | Bk. No. 08-14149 |
| Debtor. ) | |
| _____ ) | Adv. No. 11-02468 |
| ) | |
| DEL TORO LOAN SERVICING, INC.,) | |
| ) | |
| Appellant/ ) | |
| Cross-Appellee, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| SUZANNE MARIE TAKOWSKY, ) | |
| ) | |
| Appellee/ ) | |
| Cross-Appellant. ) | |
| _____ ) | |

Argued and Submitted on September 18, 2014
at Pasadena, California

Filed – November 12, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:   Stephen R. Wade for appellant/cross-appellee Del Toro Loan Servicing, Inc.; Richard Tobin Baum for appellee/cross-appellant Suzanne Takowsky.

Before:   TAYLOR, DUNN, and SPRAKER,[**] Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] The Honorable Gary A. Spraker, Chief Bankruptcy Judge for the District of Alaska, sitting by designation.

Del Toro Loan Servicing, Inc. ("Del Toro") appeals from a judgment for wrongful foreclosure in favor of debtor Suzanne Takowsky.[1]  As a threshold matter, it challenges the bankruptcy court's constitutional authority to enter the judgment.  Del Toro also alleges error in a number of the bankruptcy court's determinations.  The Debtor cross-appeals from the bankruptcy court's denial of her request for an award of emotional distress and relocation expense damages.  We conclude that the bankruptcy court did not commit reversible error and, thus, AFFIRM.

**FACTS**

The Debtor filed a chapter 13[2] bankruptcy petition in March 2008.  Approximately one month later, she obtained a $135,000 loan (the "Loan") from the Alan I. Sherman and Rachel Sherman Trust dated 11/24/1994 ("Sherman Trust").  The obligation was evidenced by a promissory note ("Sherman Note") in favor of the Sherman Trust and secured by a second priority deed of trust against the Debtor's real property in Beverly Hills, California (the "Property"); the deed of trust named Del Toro as trustee.

At the beginning of 2011, the Debtor defaulted on the Sherman Note for the second time.[3]  As a result, Del Toro recorded a notice of default ("NOD") in March 2011.  The NOD

---

[1] Individually and as Trustee of the Suzanne Takowsky Revocable Living Trust dated June 22, 2006.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] The Debtor previously defaulted on the Sherman Note in 2010.  Del Toro commenced a non-judicial foreclosure, but the Debtor timely cured the default and statutorily reinstated the obligation.

identified the Loan as the obligation in default and $5,722.18 as the amount in default as of March 16, 2011.

In the ensuing months, Pedro Ferre, the Debtor's long-term companion, served as the Debtor's point of contact and communicated with Del Toro representatives in an attempt to resolve the default. In response, Del Toro representatives emailed Ferre loan reinstatement calculations on May 13, June 16, and July 1, 2011. Apparently,[4] the May email – and only that email – indicated that "[p]roof that the senior mortgage is current, property taxes are paid and there is active insurance on the property will also be required in order to fully reinstate the loan." Trial Tr. (Jan. 18, 2013) at 193:14-18. The later emails sent to Ferre in June and July simply stated: "[a]ttached you will find the reinstatement quote to bring the account current" and "[a]ttached is the reinstatement quote forwarded to you to reinstate the account." Id. at 194:1-3, 5-6. The July 1, 2011 email stated that a payment of $14,158.20 would reinstate the Loan.

Del Toro eventually recorded a notice of sale and scheduled the trustee's sale for mid-July. On July 8, 2011, the last day possible for statutory reinstatement, Ferre went into a local bank branch and wired $14,158.20 into Del Toro's bank account. Before he wired the funds, he communicated with Del Toro and confirmed the amount necessary for reinstatement. Hours later,

---

[4] Del Toro did not include any of these emails or the May 13, 2011 reinstatement notice in the record on appeal; nor do the documents appear as filed on the adversary proceeding docket. We, thus, rely on the trial transcripts wherein the bankruptcy court read the text of the emails into the record.

3

Del Toro in an email confirmed receipt of the wired funds and acknowledged that this payment brought the "account" current. The email also stated, however, that default on the account continued because of verified delinquencies in payment of the senior obligation and property taxes. Del Toro, thus, demanded that, pursuant to California Civil Code ("CC") § 2924c(a)(1), the Debtor provide written evidence that she was current on the senior obligation, taxes, and insurance prior to reinstatement. It sent a letter to the Debtor, dated the same day, containing an identical message.

Ferre and the Debtor's attorney promptly responded to Del Toro's email; both expressed surprise and consternation. In response, Del Toro stated its intent to press forward with the sale. The Debtor then commenced an adversary proceeding against Del Toro, Alan Sherman, and Rachel Sherman. The adversary complaint alleged claims for wrongful foreclosure and fraud and deceit. Concurrently, she sought injunctive relief barring the scheduled foreclosure sale; the bankruptcy court denied the motion. As a result, after a brief postponement, Del Toro conducted the trustee's sale and sold the Property to Arden Management LLC and Borkes Capital Management LLC ("Arden and Borkes").

The Debtor eventually amended her complaint in the adversary proceeding to include Arden and Borkes as defendants. The final version of the complaint alleged claims for wrongful foreclosure and quiet title as to all defendants, claims for cancellation of the trustee's deed upon sale as to Arden and Borkes, and claims for fraud and deceit as to the Sherman Trust

4

and Del Toro. Prior to trial, the Debtor settled with the Sherman Trust and Borkes and Arden; each made substantial payments in exchange for releases. The bankruptcy court approved the settlements, leaving Del Toro as the sole defendant.

In the first joint pre-trial order, the Debtor and Del Toro stipulated that Ferre was the Debtor's authorized agent and that Del Toro was the Sherman Trust's agent. The disputed issues of law and fact centered on the $14,158.20 payment and Del Toro's representations to Ferre. The joint pre-trial order also identified waiver and estoppel issues relating to the payment and Del Toro's oral and written statements.

In its trial brief, filed the afternoon before the first day of trial, Del Toro claimed for the first time that it was protected by immunity pursuant to CC §§ 2924 and 47. The Debtor contested the assertion, arguing that, among other things, Del Toro waived the privilege defense.

The bankruptcy court conducted the liability phase of trial in January 2013. Ferre testified regarding his communications with Del Toro and emphasized that its representative told him on several occasions that tender of the amount in the reinstatement calculations would reinstate the Sherman Note. According to Ferre, the representative never once mentioned that Del Toro also required proof that the Debtor was current on the senior obligation or taxes, and that this was true even as he stood at the bank and spoke to the representative on the phone just before wiring the $14,158.20 payment.

At the conclusion of the trial on liability,[5] the bankruptcy court orally ruled in the Debtor's favor and then further explained its determinations in a memorandum decision. It determined that the NOD identified the Loan as the source of relevant default and that although Del Toro initially required proof that payments on senior obligations, taxes, and insurance were current prior to reinstatement, it subsequently abandoned that requirement. It emphasized that a person receiving the June and July emails and reinstatement calculations would not understand that reinstatement included payments not specified in those documents. It also found Ferre's testimony credible as to the statements made to him by the Del Toro representative. The bankruptcy court, thus, concluded that Del Toro improperly conducted the trustee's sale. It further concluded that Del Toro was not entitled to immunity as it waived the defense, but also found that immunity was inapplicable under the circumstances. Finally, it determined that the Debtor satisfied her burden as to the statute of frauds issue raised by Del Toro in relation to its oral statements to Ferre.

In the subsequent joint pre-trial order in relation to the trial on damages, the parties agreed that the county sheriff evicted the Debtor from the Property and that she incurred relocation expenses. Among other things, they disputed the Debtor's entitlement to emotional distress and relocation

---

[5] The bankruptcy court dismissed the Debtor's fraud and deceit claim on Del Toro's motion for judgment as a matter of law under Civil Rule 50 (made applicable in bankruptcy under Bankruptcy Rule 9015).

6

expense damages.

Following the trial on damages, the bankruptcy court issued a second memorandum decision and awarded damages in the amount of $312,606.49, based on the Debtor's loss of equity in the Property. The damages award did not include any damages on account of emotional distress and relocation expense. Timely appeals followed.

**JURISDICTION**

As discussed below, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(c)(2). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

I. On appeal, Del Toro challenges whether the bankruptcy court: (A) had constitutional authority to enter the judgment; (B) erred in determining that Del Toro could not exercise the power of sale based on the NOD; and (C) erred in determining that Del Toro's actions were not statutorily protected.

II. On cross-appeal, the Debtor argues that the bankruptcy court erred in denying her request for an award of emotional distress and relocation expense damages.

**STANDARDS OF REVIEW**

We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 820 (9th Cir. BAP 2012). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Retz v. Sampson (In re Retz),

7

606 F.3d 1189, 1196 (9th Cir. 2010).

The bankruptcy court's decision on whether to award damages is reviewed for an abuse of discretion. See Dawson v. Wash. Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139, 1150 (9th Cir. 2004). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm on any basis in the record. Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012).

**DISCUSSION**

**I.**

We first address Del Toro's issues on appeal.

**A.   The bankruptcy court had authority to enter the judgment.**

Del Toro first challenges the bankruptcy court's authority to enter a final judgment in the adversary proceeding and argues that its entry of the judgment on a state law claim violated Article III of the United States Constitution.[6] It further contends that "even with consent to enter a final judgment, the bankruptcy court could not override the restrictions set forth

---

[6] Del Toro also argues that the bankruptcy court lacked authority to enter the judgment because the Debtor's chapter 13 case exceeded the 60-month maximum period under § 1322(d). Del Toro raises this argument for the first time on appeal; we do not exercise our discretion to consider it. See Eden Place, LLC v. Perl (In re Perl), 513 B.R. 566, 576 (9th Cir. BAP 2014).

8

by Article III of the Constitution."

We reject Del Toro's argument. There is no dispute that the Debtor based her wrongful foreclosure claim in the adversary proceeding on California law. At a minimum, however, the adversary proceeding was a "related to," non-core bankruptcy proceeding as the non-exempt proceeds from the judgment, if any, were subject to administration by the chapter 13 trustee in the bankruptcy case. See 28 U.S.C. § 157(b), (c); Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (civil proceeding is "related to" a bankruptcy case if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy).

In the Ninth Circuit, "a bankruptcy court may constitutionally enter final judgment on a . . . claim against a nonclaimant to the bankruptcy estate with the consent of the parties." Mastro v. Rigby, 764 F.3d 1090, 1095 (9th Cir. 2014) (citing Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 557 (9th Cir. 2012), aff'd on other grounds, 134 S. Ct. 2165 (2014)). At oral argument, Del Toro asserted that it never consented to the bankruptcy court's entry of judgment. The record belies this assertion. At the conclusion of trial, Del Toro's counsel expressly agreed to entry of final judgment by the bankruptcy court. Trial Tr. (June 5, 2013) at 225:19-22. Further, the record is clear that this agreement was not made with the condition of future

district court review.[7]  Given Del Toro's consent, 28 U.S.C. § 157(c)(2) authorized the bankruptcy court to enter final judgment on the wrongful foreclosure claim.  See Mastro v. Rigby, 764 F.3d at 1095.

**B.    The bankruptcy court did not err in concluding that Del Toro wrongfully foreclosed under the NOD.**

Del Toro primarily challenges the bankruptcy court's determination that it could not exercise the power of sale based on the NOD.  It argues that the bankruptcy court's determination that "the NOD was required to state, with specificity, the existence of or exact amount(s) of any default on the senior lien, or the property taxes in order to require evidence that they were current, as a condition to reinstatement pursuant to [CC §§] 2924 and 2924(c)" is unsupported by authority.  Del Toro insists that California law supports its conclusions.  We disagree.

**1.    The bankruptcy court did not err in its interpretation of the NOD.**

**a.    Reinstatement of a defaulted obligation in California.**

CC § 2924c governs reinstatement of a defaulted obligation that forms the basis of a notice of default.  Reinstatement requires payment of: the defaults identified in the notice of default, defaults on "recurring obligations," and reasonable costs, expenses, and fees incurred in enforcing the obligation

---

[7] The fact that Del Toro did not elect to have its appeal heard by the district court underscores this point.

10

or security. Cal. Civ. Code § 2924c(a)(1).[8] Reinstatement, thus, involves not only payment of the defaults expressly identified in the notice of default and foreclosure expenses, but also payment of "recurring obligations." The notice of default, however, need not identify a "recurring obligation." See Cal. Civ. Code § 2924c(a)(1); 1990 Cal. Legis. Serv. ch. 657 (S.B. 2339).[9]

If a new default occurs or is discovered after the notice of default is recorded, and the default is not a "recurring obligation," a new notice of default is required. See Cal. Civ. Code § 2924(e) (rebuttable presumption that beneficiary actually

---

[8] The statute specifically provides that the trustor must pay the beneficiary the entire amount due, at the time payment is tendered, with respect to:
    (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances **actually known by the beneficiary** to be, and that are, **in default** and shown in the **notice of default**, under the terms of the deed of trust or mortgage and the obligation secured thereby, and
    (B) all amounts in default on **recurring obligations not shown in the notice of default** . . . .
Cal. Civ. Code § 2924c(a)(1) (emphasis added).

[9] The reinstatement statute was amended in 1990; the legislative history indicates that the statute was amended to:
    [P]ermit . . . beneficiary under a trust deed to require the . . . trustor to cure all defaults under the . . . trust deed of principal, interest, taxes, assessments, insurance premiums, or advances **actually known by the beneficiary to be in default**, as specified, and **shown in the notice of default**, plus all amounts in default on **recurring obligations**, as defined, **not shown in the notice of default**, as a condition to reinstating the secured obligation and avoiding a sale of the security property.
1990 Cal. Legis. Serv. ch. 657 (S.B. 2339) (emphasis added).

11

knew of all unpaid loan payments on the obligation owed; but, "the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.").

For the purposes of CC § 2924c, a "recurring obligation" means:

> [1] all amounts of principal and interest on the loan subject to the deed of trust in default **due after the notice of default is recorded**;
>
> [2] all amounts of principal and interest **advanced** on senior liens, which are advanced **after the recordation of the notice of default**; and
>
> [3] payments of taxes, assessments, and hazard insurance **advanced after recordation of the notice of default.**

Cal. Civ. Code § 2924c(a)(1) (emphasis added). A recurring obligation, thus, is limited to obligations secured by the trust deed involved in the foreclosure; this type of obligation includes both principal and interest coming due on the underlying loan after recordation of the notice of default and amounts that the foreclosing lender is entitled to add to its secured claim on account of actual advances for payment of senior obligations, real property taxes, and insurance. In sum, reinstatement requires payment of all amounts secured by the trust deed that is the subject of the foreclosure.

Reinstatement may also include other payments; the beneficiary **may** require the trustor to provide reliable written evidence that amounts owed to senior lenders, tax authorities, and insurers have been paid as a condition precedent to reinstatement. See id.

12

Upon payment of the required reinstatement amount, which always includes complete payment of the defaulted amount of the trust deed secured obligation (unless the parties otherwise mutually agree in writing) and may include payments on senior obligations, taxes, and insurance, the foreclosure sale "shall be dismissed or discontinued and the obligation and deed of trust . . . shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred." Cal. Civ. Code § 2924c(a)(1).

### b. The default or defaults subject to the NOD were reinstated prior to foreclosure.

Here, the bankruptcy court determined that the NOD described the breach at issue as the default on the Loan. We agree. The NOD referenced a loan number found on both the Sherman Note and the related trust deed.

It also determined that the Debtor tendered the amount listed in the July 1, 2011 loan reinstatement calculation and, thus, that she "cured the only default explicitly listed in the NOD." Adv. ECF No. 133 at 14. It acknowledged that the Debtor was delinquent on the senior obligation and taxes and that the Sherman Trust and Del Toro "could have, when they issued the NOD, conditioned reinstatement on [the Debtor] being current on senior liens, property taxes, and hazard insurance premiums." Id. But, it concluded that Del Toro could not exercise the power of sale "on those grounds because Del Toro did not specify those defaults in the NOD." Id. Again, we see no error. The NOD related solely to the Loan; amounts owed to third parties were not secured by the trust deed related to the Loan unless

13

the Sherman Trust advanced amounts to pay them.  Further, they were not "recurring obligations."  Del Toro does not allege that the Sherman Trust advanced any amount on account of the senior obligation, property taxes, or insurance.

We acknowledge that the Sherman Trust had the right to condition reinstatement on the Debtor's written proof that the senior obligation, taxes, and insurance were current.  See Cal. Civ. Code § 2924c(a)(1).  The NOD referenced this right and stated:

> While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust . . . .  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust . . . , the beneficiary . . . **may** insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary . . . **may** require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Cal. Civ. Code § 2924c(b)(1) (emphasis added).
Del Toro, however, misses the key point - the reinstatement statute and the NOD made this condition precedent optional. Unlike the absolute requirement that Debtor pay amounts secured by the trust deed at the time of reinstatement, the requirement that she pay amounts owed to third parties was optional.  And the bankruptcy court correctly found on this record that at the time of reinstatement, Del Toro, as the Sherman Trust's agent, did not require compliance with the optional condition precedent.

Further, and contrary to Del Toro's assertion, the bankruptcy court did not err in its reliance on Anderson v.

14

Heart Fed. Sav. & Loan Ass'n, 208 Cal. App. 3d 202 (1989), Ung v. Koehler, 135 Cal. App. 4th 186 (2005), and Sys. Inv. Corp. v. Union Bank, 21 Cal. App. 3d 137 (1971). In Anderson, the California court of appeal held that a beneficiary, as a condition to cure of the default as to principal and interest could not demand payment of delinquent taxes or repayment of advances for insurance premiums. 208 Cal. App. 3d at 215. In response to Anderson, the California legislature amended the reinstatement statute in 1990, adding the language on recurring obligations. See 1990 Cal. Legis. Serv. ch. 657 (S.B. 2339). In doing so, the legislature stated its intent to "supersede" Anderson insofar as the case restricted a beneficiary's ability "to demand payment of all amounts in default under the terms of an obligation secured by a . . . trust deed as a condition to reinstatement of the obligation . . . ." Id., note sec. 3. As stated, however, the amounts owed to third parties here were not secured by the subject trust deed and were not recurring obligations. Further, at the time of reinstatement, payment of the optional condition precedent was not required. The bankruptcy court did not rely on Anderson in a manner inconsistent with the reinstatement statute.

As Del Toro asserts, Ung merely reinforces the well-established rule that as to a notice of default, "t]he debtor is to be given enough information so the default can be cured." 135 Cal. App. 4th at 202. Similarly, in System Investors, the California court of appeal reiterated that someone "relying upon the notice of default is bound by its provisions, and cannot insist upon any grounds of default other than those stated in

15

that notice." 21 Cal. App. 3d at 153 (internal citation and quotation marks omitted). Del Toro does not suggest that these cases are overruled. And, in any event, the bankruptcy court did not rely on them erroneously.

In sum, Del Toro has not shown that the bankruptcy court committed reversible error in determining that the Debtor reinstated the Loan through the $14,158.20 wire transfer. As a result of this reinstatement, Del Toro was not free to continue with the foreclosure.

**2.     Del Toro was equitably estopped from requiring written proof of third party payments as a condition to reinstatement.**

The first joint pre-trial order identified as triable issues of law waiver and estoppel in relation to Del Toro's July 1 reinstatement calculation, its statements to Ferre, and its acceptance of the $14,158.20 payment. Further, "we may consider a legal issue not raised on appeal where the matter is one of law and further development of the factual record is not necessary." Canino v. Bleau (In re Canino), 185 B.R. 584, 594 (9th Cir. BAP 1995); United States v. Howell (In re Howell), 120 B.R. 137, 140 (9th Cir. BAP 1990) (nature of equitable estoppel elements raise questions of law). Here, the record supports a determination that equitable estoppel barred Del Toro from proceeding with foreclosure after it accepted the $14,158.20 wire transfer.

Equitable estoppel prevents one party from denying "the existence of a state of facts if [the party] intentionally led another to believe a particular circumstance to be true and to

16

rely upon such belief to [their] detriment." City of Goleta v. Superior Court, 40 Cal. 4th 270, 279 (2006); see also Eucasia Sch. Worldwide, Inc. v. DW August Co., 218 Cal. App. 4th 176, 182 (2013) (equitable estoppel "prevent[s] a person from asserting a right which has come into existence by contract, statute or other rule of law where, because of his conduct, silence or omission, it would be unconscionable to allow him to do so.").

The elements for equitable estoppel are: (1) the party to be estopped must know the facts; (2) they must intend that their conduct will be acted on or must act in a way that causes the other party to believe that was their intent; (3) the other party must be ignorant of the true facts; and (4) the other party must detrimentally rely on the conduct. City of Goleta, 40 Cal. 4th at 279.

Here, no matter the Sherman Trust or Del Toro's actual, subjective intent, Del Toro made statements and took actions that reasonably led to the conclusion that the $14,158.20 wire transfer would reinstate the Loan and halt foreclosure. It initially required proof of third party payments in addition to payment in full of amounts secured by the trust deed, but thereafter consistently took a contrary position. Indeed, Ferre testified that immediately prior to wiring the money to Del Toro, its representative confirmed that all he was required to do to stop the foreclosure sale was cure the default as reflected in the July 1 loan reinstatement calculation. Del Toro did not offer declaratory evidence to the contrary from the representative. The bankruptcy court found Ferre credible on

17

this point, and "we give great deference to the bankruptcy court's determinations regarding the credibility of witnesses." See In re Retz, 606 F.3d at 1203-04. The reasonableness of Ferre's assumption is underscored by the fact that: "generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default and precludes a foreclosure sale based upon such pre-existing delinquency. The same is true of a tender which has been made and rejected." Bisno v. Sax, 175 Cal. App. 2d 714, 724 (1959).

Del Toro notified the Debtor and Ferre of the renewed condition precedent for proof of payment on third party obligations only after its receipt, acceptance, and retention of the $14,158.20 payment and only after there was detrimental reliance in the form of a significant payment. Nothing in the record suggests that Del Toro ever returned the $14,158.20 to the Debtor. And there can be no serious dispute that the Debtor made this payment in an attempt to stop foreclosure.

Del Toro contends that "its conduct did not constitute waiver of the right to demand proof of current status on the [senior obligation.]" It argues that, under California law, waiver requires an intentional relinquishment of rights and, thus, there was no basis, as a matter of law, for a finding of waiver.

First, Del Toro misconstrues the record; the bankruptcy court never made an explicit finding as to waiver of the condition, let alone that Del Toro intended to waive it. Second, to the extent that Del Toro actually refers to estoppel, we disagree for the reasons discussed above. And, third, even

18

if waiver was at issue here, a finding that Del Toro intentionally or voluntarily waived the condition was not necessarily required. See Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 374 (2014) ("While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right.") (internal citation omitted).

Under these circumstances, it was unconscionable for Del Toro to move forward with the foreclosure sale. As a result, it was equitably estopped from requiring written proof that the Debtor was current on the senior obligation and taxes as a condition to reinstatement.

### 3. The statute of frauds does not provide Del Toro with a defense.

Del Toro also argues that the statute of frauds prevented the admission of evidence of its oral statements modifying the terms of the NOD. Citing CC § 1624, it contends that the statute of frauds prohibited evidence of an alleged oral agreement or the bankruptcy court's enforcement of the alleged agreement.

We find Del Toro's statute of frauds argument puzzling; the bankruptcy court did not determine that there was an oral agreement between Del Toro and the Debtor to modify the NOD. Indeed, the record makes clear that neither the Sherman Note nor

19

the trust deed nor the NOD were ever amended.[10]  At all relevant times, the NOD stated that the Sherman Trust had the option of requiring proof of third party payments as a condition precedent to reinstatement.  The problem is that Del Toro's statements and actions reasonably indicated that the Sherman Trust did not intend to exercise this optional right.  So far as we can tell, the statute of frauds had no application to the wrongful foreclosure claim here.

**C.   Del Toro's absolute privilege argument was not preserved.**

Finally, Del Toro argues that its communications as a foreclosing trustee were absolutely privileged pursuant to CC § 2924 and 47.  As a finding of malice is required to defeat the privilege under California law,[11] it challenges the bankruptcy court's finding that it acted with malice, and argues that the first joint pre-trial order did not identify malice as an issue for adjudication.

Del Toro, however, neglects to address the fact that the bankruptcy court initially found that it waived this defense.[12]

---

[10] In this respect, Del Toro's reliance on <u>Secrest v. Sec. Nat. Mortg. Loan Trust 2002-2</u>, 167 Cal. App. 4th 544 (2008), is inapposite.  In that case, the California court of appeal held that a forbearance agreement that modified a promissory note and deed of trust – agreements themselves subject to the statute of frauds – was, in turn, also subject to the statute of frauds pursuant to CC § 1698.  <u>Id.</u> at 553.

[11] CC § 47(c) applies to communications "without malice."

[12] Observing that privilege was an affirmative defense, the bankruptcy court identified two instances of waiver here: first, that Del Toro failed to appropriately plead privilege as a defense in its answer.  And, second, that Del Toro failed to
(continued...)

20

Although it listed the CC § 2924(d) waiver issue in its statement of issues on appeal and in its brief on appeal, Del Toro never specifically and distinctly addressed that issue in the brief itself. As a result, we do not consider the waiver determination on appeal. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (appellate court "will not consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.") (internal citation and quotation marks omitted).

Thus, the bankruptcy court's waiver determination provides a sufficient reason for affirmance, and we need not consider its alternative basis for disregarding Del Toro's privilege claim.

**II.**

We next address the Debtor's issues on cross-appeal.

**A.  The bankruptcy court did not err when it declined to award additional damages.**

On cross-appeal, the Debtor argues that the bankruptcy court erred when it declined to award emotional distress and incidental damages to the Debtor. We disagree.

**1.  Emotional distress damages.**

The Debtor argues that the bankruptcy court clearly erred when it found that Del Toro did not proximately cause her emotional distress. She contends that the bankruptcy court discarded the established standard for causation, which permits

[12] (...continued)
raise or include the defense in the joint pre-trial order; instead, it raised the privilege issue for the first time in its phase one trial brief. And, we note that Del Toro filed this trial brief on the afternoon prior to the first day of trial.

recovery when a defendant's actions were a substantial factor that resulted in damages.  We affirm the bankruptcy court's ultimate decision on an alternative basis.

Generally, a person may not recover damages for emotional distress based solely on a wrongful foreclosure claim.  <u>See</u> Miller and Starr, <u>California Real Estate</u> § 10:254 (3d ed.) (citing <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 554 (1999) (California does not permit "recovery for emotional distress arising solely out of property damage.")).  Instead, recovery for emotional distress is potentially available when alleged in a concurrent, but separate, claim for intentional infliction of emotional distress.  <u>See</u> <u>Ragland v. U.S. Bank Nat'l Ass'n</u>, 209 Cal. App. 4th 182, 203 (2012).  Indeed, our search of case authority failed to yield a single California case where emotional damages were awarded in connection with a judgment for wrongful foreclosure in the absence of a handcuffed claim for intentional infliction of emotional distress.  The Debtor's reliance on cases involving wrongful eviction and on CC § 3333,[13] thus, does not compel a different result.

Here, the final version of the adversary complaint did not allege a claim for intentional infliction of emotional distress

---

[13] Cal. Civ. Code § 3333, titled "Torts in general," provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

22

damages.[14] Nor was there an alternative tort basis for the recovery of emotional distress. In sum, there was no basis for the Debtor to recover emotional distress damages.

The Debtor relies on Pintor v. Ong, 211 Cal. App. 3d 837, 841 (1989), but it is distinguishable. There, the California court of appeal held that the rule of tort damages applied to the defendant's violation of a statutory duty, "namely, that all detriment proximately caused by breach of a legal duty is compensable, including damages for emotional distress." Id. at 841-42. That case did not involve wrongful foreclosure. Instead, Pintor involved breach of a specific statutory duty – the failure to reconvey a deed of trust after satisfaction of the debt – which, in turn, gave rise to strict liability for all damages sustained as a result of the violation.[15] See id. at 843. There is no such strict liability statute in connection with wrongful foreclosure.

On this record, the bankruptcy court did not err in denying damages for emotional distress.

---

[14] To state a claim for intentional infliction of emotional distress, the "plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 744-45 (2002).

[15] See Cal. Civ. Code § 2941(d) ("The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of five hundred dollars ($500).").

## 2. Moving and storage costs and expenses.

The Debtor also argues that she was entitled to moving and storage expenses incurred as a result of the wrongful foreclosure. According to the Debtor, whether she inevitably would have incurred these expenses in the future is irrelevant, as Del Toro set in motion the particular circumstances necessitating her relocation. We, again, disagree.

Proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." PPG Indus., Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310, 316 (1999) (internal citation omitted). Here, policy considerations support the bankruptcy court's denial of any recovery for relocation damages.

The bankruptcy court found that the Debtor "would have incurred those costs and expenses regardless of Del Toro's wrongdoing," as relocation was imminent for other reasons. On this record, the bankruptcy court's finding was not clearly erroneous and was not inconsistent with the damages awarded in connection with wrongful foreclosure. It determined that, although loss of the Property was inevitable, the Debtor had the ability to recover equity in the Property through overbid or sale. The bankruptcy court, thus, awarded damages in connection with lost equity. In doing so, it implicitly determined that the Debtor was not entitled to recover both equity and possession of the Property. This determination was not illogical, implausible, or without support from the record. The bankruptcy court, thus, did not err in denying damages for

24

relocation costs and expenses.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court.